**BELLE FOURCHE PIPELINE COMPANY, Black Hills Trucking, Inc., Equitable Oil Purchasing Company, Eighty-Eight Oil Company, J. Frank Pottorff and H.A. True, Jr., Plaintiffs-Appellees,**

v.

**UNITED STATES of America and Federal Energy Regulatory Commission, Defendants-Appellants.**

No. 83–1384.

United States Court of Appeals, Tenth Circuit.

Dec. 27, 1984.

Jack Vickrey of Vickrey & Doggett, Houston, Tex. (Robert Stanley Lowe and Manuel A. Lojo, Casper, Wyo., with him on the brief), for plaintiffs-appellees.

Thomas E. Hirsch, III, Atty., Federal Energy Regulatory Commission, Washington, D.C. (J. Paul McGrath, Asst. Atty. Gen., and Robert S. Greenspan and Bruce G. Forrest, Attys. Civil Division, Dept. of Justice; Stephen R. Melton, Acting General Counsel, and Barbara J. Weller, Deputy Sol., Federal Energy Regulatory Commission, Washington, D.C., with him on the briefs), for defendants-appellants.

Before HOLLOWAY, Chief Judge, and SETH and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The United States and the Federal Energy Regulatory Commission (FERC) appeal from an order entered by the district court, 554 F.Supp. 1350, enjoining them from enforcing four subpoenas issued against the Belle Fourche Pipeline Company and three affiliated corporations, Black Hills Trucking, Inc., Equitable Oil Purchasing Company, and Eighty-Eight Oil Company. Because we find that the district court lacked subject matter jurisdiction to entertain this pre-enforcement suit, we discuss only that issue.[1]

Belle Fourche operates an oil transportation system in Montana, North Dakota, and Wyoming. Belle Fourche owns oil pipeline systems, two of which transport oil across state lines. Belle Fourche also operates the Powder River pipeline system, located entirely within the state of Wyoming. Black Hills Trucking owns and operates common-carrier tank trucks that transport oil from producing wells in Wyoming to various truck reception points in the Powder River system; it also provides trucking services to shippers in North Dakota. Eighty-Eight Oil Company purchases and markets crude oil in Wyoming and also ships a substantial portion of this oil through the Belle Fourche pipeline. Equitable Oil Purchasing Company operates a "gravity bank" in Wyoming for the Belle Fourche pipeline.[2]

In late 1981 the FERC initiated a private investigation of the Belle Fourche companies. *See* 18 C.F.R. §§ 1b.1–.20. Shortly thereafter an investigative officer for FERC issued subpoenas to the pertinent principals of these four Belle Fourche companies. In order to facilitate the investigation, the FERC agreed to send its employees to the offices of these companies and examine the subpoenaed documents rather than require their production at FERC headquarters in Washington, D.C. During the FERC's first visit to the companies' offices in Casper, Wyoming, the commission staff copied thousands of pages of documents.

During a mutually arranged second visit, plaintiffs informed the FERC officials of their intentions to enjoin the investigation. Thereupon, plaintiffs filed a complaint in the United States District Court for the District of Wyoming seeking declaratory and injunctive relief against the investigation on the ground that the investigation exceeded the FERC's authority. Plaintiffs alleged jurisdiction pursuant to the Department of Energy Organization Act, 42 U.S.C. § 7192(b), the Administrative Procedure Act, 5 U.S.C. §§ 701–702, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. On that same day, the district court granted plaintiffs' request for a temporary restraining order suspending the FERC's investigation. But it there-

---

1. The United States and the FERC claim additionally that the district court erred in quashing these subpoenas as overbroad and unreasonable.

2. A "gravity bank" is used by crude oil shippers that transport oil through a pipeline. The gravi- ty of crude oil is a measure of its quality. Crude oil of higher gravity is generally more valuable than crude of a lower gravity. When a producer mixes its crude with crude of a different gravity the gravity bank compensates the producer for the difference.

after granted the FERC's motion to dismiss the case, holding that none of the provisions plaintiffs cited and relied upon gave the district court subject matter jurisdiction.

The plaintiffs then filed an amended complaint substantially identical to its first complaint except adding, to support jurisdiction, references to 28 U.S.C. §§ 1331, 1337, and 1361 and to the court's general equitable powers. Finding that a resolution of the dispute between the parties required an interpretation of the Interstate Commerce Act, the district court this time found it had federal question jurisdiction under 28 U.S.C. §§ 1331 and 1337. It permanently enjoined the FERC from attempting to enforce the issued subpoenas. Although the court found that the FERC was not exceeding its authority in conducting the investigation, it nevertheless found that the subpoenas were not "reasonably relevant" to the agency's authority because they were overbroad and unreasonably burdensome to the plaintiffs. The FERC appeals this determination, claiming the lower court erred in holding it had jurisdiction to decide these issues.

■ Subpoenas issued by the FERC are not self-executing; rather, to enforce them the FERC must seek an order from a federal district court compelling compliance with all or part of the subpoenas. See 49 U.S.C. § 12(2), (3). When an agency requests enforcement pursuant to 49 U.S.C. § 12(2) and (3) the federal court has subject matter jurisdiction. See ICC v. Brimson, 154 U.S. 447, 489, 14 S.Ct. 1125, 1137, 38 L.Ed. 1047 (1894).

■ In the case before us, the FERC never formally initiated enforcement proceedings in the federal district court. Instead, plaintiffs sought a protective order from the district court. The district court regarded the dispute over whether the case was in the proper posture to vest the court with jurisdiction to suppress the subpoenas as a procedural quibble.

"The Commission has repeatedly argued that the Plaintiffs' method of contesting the validity of the subpoena is not proper, asserting that the Plaintiffs' claims are not ripe for review and that the correct procedure is for the Plaintiffs to refuse compliance with the subpoena and for the agency to bring an enforcement action. It is argued that the Plaintiffs may assert their rights only after the agency has sought judicial enforcement. Such an argument elevates form over substance. The Plaintiffs contend that the subpoenas are invalid. Defendant alleges that the subpoenas are valid, and it wishes to continue its private, secret investigation. Although it has not formally counterclaimed for enforcement, that is the result it seeks, else it would not be contesting Plaintiffs' claims so vigorously."

R. II, 320. Its order later states that the FERC "has in effect asked this Court to enforce the subpoenas by not enjoining its investigation." Id. at 321.

The United States Supreme Court has addressed the propriety of pre-enforcement review when an object of an agency subpoena seeks injunctive relief. The principal question raised in such a proceeding is whether the dispute is sufficiently developed or "ripe" to create subject matter jurisdiction in the federal district court. In Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), the Supreme Court announced a rule strongly disfavoring any pre-enforcement review of investigative subpoenas. Specifically, that case held that a pre-enforcement order enjoining an Internal Revenue Service (IRS) subpoena was improper because an adequate legal remedy existed for challenging the validity of the subpoena in a subsequent enforcement hearing. The court noted that at this enforcement hearing the investigated party could challenge the subpoena on any appropriate ground. Id. 375 U.S. at 449, 84 S.Ct. at 513.

The "basic rationale [for the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial inter-

ference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In the instant case, by accepting the plaintiffs' suit before the FERC had sought judicial enforcement of its subpoenas the court interfered with an ongoing investigation which it acknowledged was within the FERC's authority to conduct even if all of the plaintiffs' business activities were intrastate. The district court forced the FERC to defend its power to act and to reveal at least some of the purposes of its investigation; it then held that the subpoenas were invalid because they were overbroad and were unreasonably disrupting the business operations of the companies. The companies had a simple solution to the disruption if they reasonably believed the FERC was attempting to examine documents that they had a legal right to withhold; that was to refuse permission to make the examination. The FERC then would be faced with a choice whether it had enough information without further investigation, whether it should pursue its investigation in some different manner, or whether to go to court to seek judicial enforcement of the subpoenas as they were written or in some different form. The choice would be the agency's, and until it made a decision to seek judicial enforcement plaintiffs' business activities would not be affected. In fact, the agency might decide not to enforce the subpoenas, thus no court decision would ever be necessary.

The facts of the present case are strikingly similar to those in *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 440, 11 L.Ed.2d 459. The statutory procedure under consideration in *Reisman* was virtually identical to the procedure authorizing enforcement of the FERC subpoenas. The plaintiffs in *Reisman*, as in the case before us, argued that refusing to comply with the Commissioner's subpoena and awaiting judicial enforcement exposed plaintiff to severe penalties. The Supreme Court dismissed this claim, reasoning that "noncompliance is not subject to prosecution ... when the [summons] is attacked in good faith." *Id.* at 447, 84 S.Ct. at 512. Similarly, if plaintiffs' defense to the FERC's subpoenas has merit, they will not be exposed to civil fines. Therefore, we hold that the target companies, like the plaintiff in *Reisman*, possessed an adequate legal remedy and were not exposed to the type of immediate, irreparable injury necessary to justify jurisdiction. *Accord Atlantic Richfield Co. v. FTC*, 546 F.2d 646, 649 (5th Cir. 1977).[3]

The district court ruled that in effect the FERC counterclaimed for the enforcement of the subpoenas. But in *Servitron, Inc. v. ICC*, 380 F.Supp. 1344, 1346 (M.D.La.1974), *aff'd mem.*, 420 U.S. 999, 95 S.Ct. 1440, 43 L.Ed.2d 758 (1975), and *Comet Electronics, Inc. v. United States*, 381 F.Supp. 1233, 1237 (W.D.Mo.1974), *aff'd mem.*, 420 U.S. 999, 95 S.Ct. 1439, 43 L.Ed.2d 758 (1975), relied upon by plaintiffs, the Interstate Commerce Commission specifically counterclaimed for judicial enforcement of the subpoenas, thereby creating an independent jurisdictional ground for the district court and permitting a full hearing on the merits. In the instant case, neither the United States nor the FERC did that; rather, on many occasions throughout the proceeding they objected to the court's exercise of jurisdiction. We do not consider their opposition to the district court's taking jurisdiction of plaintiffs' case to be the equivalent of a counterclaim for enforcement.

The case is remanded to the district court with instructions to dismiss the action for lack of subject matter jurisdiction.

**3.** The district court, after quashing the FERC subpoenas, essentially agreed in dictum that the plaintiffs here acted prematurely. "Claims that the Commission [FERC] has no authority to regulate the actions of the Plaintiffs are premature at this stage. The Commission has made no such determination and Plaintiffs are not aggrieved by the mere potential that some action might be taken by FERC." R. II, 339.