**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 16 1999**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MOBIL EXPLORATION &
PRODUCING U.S., INC., and MOBIL
CORPORATION,

    Plaintiffs,

and

OXY USA INC. and OCCIDENTAL
OIL AND GAS CORPORATION,

    Plaintiffs - Appellants,

v.

DEPARTMENT OF INTERIOR, sued
as: Bruce Babbitt, Secretary,
Department of the Interior; Cynthia
Quarterman, Director, Minerals
Management Service, Department of
the Interior; Erasmo Gonzales, Chief,
Houston Compliance Division,
Minerals Management Service,
Department of the Interior; and Gary
L. Johnson, Chief, Dallas and Tulsa
Compliance Offices, Minerals
Management Service, Department of
the Interior,

    Defendants - Appellees.

No. 98-5009

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 96-CV-790-K)**

---

Submitted on the briefs:

Patricia Dunmire Bragg and Stephen R. Ward of Gardere & Wynne, L.L.P., Tulsa
Oklahoma; Oliver S. Howard, Teresa B. Adwan, and Dennis C. Cameron of
Gable, Gotwals, Mock, Schwabe, Kihle, and Gaberino, Tulsa, Oklahoma; Patricia
A. Patten of Oxy USA Inc., Tulsa, Oklahoma, for Oxy USA Inc. and Occidental
Oil and Gas Corporation.  David L. Bryant and Alinda F. Stephenson of Bryant
Law Firm, Tulsa, Oklahoma; Deborah B. Haglund of Mobil Business Resources
Corp., Dallas Texas, for Mobil Exploration & Producing U.S. Inc. and Mobil
Corporation.

Lois J. Schiffer, Assistant Attorney General; Donna S. Fitzgerald and Robert L.
Klarquist, Attorneys, Department of Justice; Ivan K. Fong, Deputy Associate
Attorney General, Washington, D.C.; and Geoffrey Heath and Howard Chalker,
Office of the Solicitor, Department of the Interior, Washington, D.C., for
Defendants-Appellees.

_____

Before **BALDOCK**, **McKAY**, and **BRORBY**, Circuit Judges.

_____

**McKAY**, Circuit Judge.

_____

After examining the briefs and the appellate record, this panel has

determined unanimously that oral argument would not materially assist the

determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

The case is therefore ordered submitted without oral argument.

Plaintiffs Occidental Oil & Gas Co. and its subsidiary OXY USA, Inc.,

appeal the district court's order on cross-motions for summary judgment

-2-

determining that it lacked subject matter jurisdiction over this action.[1]  We

exercise jurisdiction under 28 U.S.C. § 1291.


# I.

Plaintiffs are federal oil and gas lessees in California on leases issued

under the Mineral Leasing Act, 30 U.S.C. §§ 181-287, and the Outer Continental

Shelf Lands Act, 43 U.S.C. §§ 1331-1356.  Defendants, the Secretary of the

Interior, the Department of the Interior, and the Minerals Management Service

[MMS], are responsible for administering oil and gas leases for federal, Indian,

and tribal lands issued under the mineral leasing laws.  See generally Federal Oil

and Gas Royalty Management Act of 1982 [FOGRMA], 30 U.S.C. §§ 1701-1757.

The MMS is the agency within the Department of the Interior responsible for

determining royalty value and collecting royalties due on federal or Indian oil and

gas leases.

On July 18, 1996, the MMS sent a letter to OXY stating that it was

"conducting a review of the valuation of crude oil for royalty purposes . . . [which

would] cover crude oil and related transactions for January 1, 1980 through [July

31, 1996]." Appellants' App., Vol. II, Doc. 12 at 342.  The letter also stated:

---

[1]Plaintiffs Mobil Exploration & Producing U.S., Inc., and Mobil
Corporation were dismissed from this appeal by this court's Order filed January 6,
1999.

MMS requests OXY to keep all records related to its California operations for the audit period. [MMS] also request[s] access to all documents and information in OXY's possession related to the production and disposition of crude oil for the audit period. An initial request for information is set forth in the Enclosure. Additional records and information necessary to complete the audit will be requested as needed.

Id. Plaintiffs did not respond to the letter nor did they provide the MMS with access to the documents requested. Consequently, on September 4, 1996, the MMS issued an administrative subpoena to Occidental to produce information pursuant to 30 U.S.C. §§ 1711, 1713(a), and 1717(a) by September 30, 1996. See id. at 368-71. Although Plaintiffs turned over documents maintained for the six years prior to July 31, 1996, they have not complied with the subpoena to the extent that it orders the production of documents generated before July 31, 1990.

Plaintiffs brought this action in the United States District Court for the Northern District of Oklahoma seeking two results: (1) a declaratory judgment that the document request letter and the administrative subpoena relating to the MMS audit are invalid; and (2) injunctive relief barring or preventing enforcement of the document request letter and the subpoena. Defendants filed a motion to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The district court denied the motion but stated that it would revisit the jurisdictional issue on summary judgment. The parties then filed cross-motions for summary judgment. Defendants again claimed that

-4-

the court did not have subject matter jurisdiction.

With respect to whether Plaintiffs' claim objecting to the document request letter was ripe for review, and relying partly on the government's disavowal that it would pursue penalties against Plaintiffs under 30 U.S.C. § 1719(c)(2), the district court found that the letter did not impose any legal obligation on Plaintiffs. Additionally, even assuming that a legal obligation existed, the court found that the letter did not constitute final agency action because it was not the consummation of the agency's decisionmaking process.

The district court also determined that because the administrative subpoenas were not self-executing and because no enforcement action had been filed in the Northern District of Oklahoma, review of Plaintiffs' complaint would contradict the general rule against reviewing pre-enforcement actions. Although Defendants had filed an enforcement action against Plaintiffs in the Central District of California, the court did not believe that the enforcement action conferred jurisdiction in the Northern District of Oklahoma.[2] Therefore, the court held that it was "not persuaded that an anticipatory action challenging the validity of an administrative subpoena confers jurisdiction on this Court." Id., Doc. 23 at 909.

---

[2]The United States District Court for the Central District of California dismissed the enforcement action without prejudice because the instant case was pending in the Northern District of Oklahoma.

In response to Plaintiffs' claim that "dismissal of this action would condemn them to maintain records beyond the six-year statute of limitation" set forth in 30 U.S.C. § 1713(b), id. at 913, the court held that "there is no per se rule against document requests by the MMS beyond the six-year statute of limitation." Id. at 914. Finally, the district court cast aside Plaintiffs' assertion that the MMS' initiation of the audits exceeded its statutory authority. The court held that this case did not "'present one of the extraordinary exceptions to the [final agency action] requirement.'" Id. at 915 (quoting Veldhoen v. United States Coast Guard, 35 F.3d 222, 225 (5th Cir. 1994)). Accordingly, the district court concluded that it lacked subject matter jurisdiction because Plaintiffs' claims were not ripe for review, and it granted summary judgment to Defendants.

## II.

We review orders granting or denying summary judgment de novo. See Phillips Petroleum Co. v. Lujan, 963 F.2d 1380, 1384 (10th Cir. 1992) (Phillips II). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995). "If there is no

-6-

genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court." Wolf, 50 F.3d at 796.

On appeal, Plaintiffs argue that the court erred in determining that it did not have jurisdiction and they essentially repeat the arguments they made to the district court. They assert that the district court possesses subject matter jurisdiction because the document request letter and the administrative subpoena constitute final agency actions which are ripe for review. In the alternative, Plaintiffs contend that their claims are reviewable because the MMS exceeded its statutory authority in initiating the audit relating to, ordering the retention and disclosure of, and issuing the subpoena for documents more than six years old. Defendants respond that the district court correctly determined that Plaintiffs' claims were not ripe for judicial review.

**III.**

The Administrative Procedure Act provides a right to judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Under the APA, a court is authorized to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority or limitations." Id. § 706(2)(A) &

(C).  "[B]efore a court may review an agency decision, it must evaluate 'the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration.'"  Ash Creek Mining Co. v. Lujan, 934 F.2d 240, 243 (10th Cir. 1991) (quoting Abbott Lab. v. Gardner, 387 U.S. 126, 149 (1967)).  Our application of the doctrine of ripeness prevents courts from entangling themselves in administrative policy disagreements and "protect[s]  the agencies from judicial interference until an administrative decision [is] formalized and its effects felt in a concrete way by the challenging parties." Abbott Lab., 387 U.S. at 148.

In evaluating claims pursuant to the ripeness doctrine, we generally consider four factors:

> (1) whether the issues in the case are purely legal; (2) whether the agency action is "final agency action" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704; (3) whether the action has or will have a direct and immediate impact upon the plaintiff[;] and (4) whether the resolution of the issues will promote effective enforcement and administration by the agency.

Ash Creek, 934 F.2d at 243 (citing Abbott Lab., 387 U.S. at 149-54).  As to the first factor, the parties do not dispute that the issues before us are purely legal. The second factor, however, is particularly pertinent to our review of this case because the parties fundamentally disagree about whether the July 1996 document request letter and the administrative subpoena constitute final agency action.

-8-

## A. Final Agency Action

It is well established that the finality of an administrative action depends on whether the action "'impose[s] an obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the administrative process.'" Id. (citation omitted); see also Phillips II, 963 F.2d at 1387. More recently, the Supreme Court has articulated this test for final agency action as having two conditions. "First, the action must mark the 'consummation' of the agency's decisionmaking process . . . . And second, the action must be one by which 'rights or obligations have been determined,' or from which "legal consequences will flow.'" Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (citations omitted); see also Franklin v. Massachusetts, 505 U.S. 788, 797 (1992) (stating test as "whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties").

## 1. Document Request Letter

Plaintiffs argue that the document request letter, which they characterize as an "audit engagement order," is reviewable final agency action for three reasons: (1) it imposes a legal obligation to retain royalty records for the audit period; (2) it represents the consummation of the administrative process; and (3) there is no other adequate remedy under the Administrative Procedure Act.

Under the Bennett framework, the first question before us is whether the letter sent by the MMS to OXY constituted the consummation of the MMS' decisionmaking process for purposes of our finality determination. Plaintiffs seem to argue that the letter consummated the MMS' decisionmaking process about whether to conduct an audit because the letter initiated an audit under 30 U.S.C. § 1713(b) and the initiation of an audit requires Plaintiffs to retain all records for the audit period until the Secretary releases them from that obligation.[3] The statute provides that a lessee must maintain records "for 6 years after [they] are generated unless the Secretary notifies the record holder that he has initiated an audit or investigation involving records *and* that such records must be maintained for a longer period." 30 U.S.C. § 1713(b) (emphasis added).

While we are initially guided by the Supreme Court's instruction that an action of "a merely tentative or interlocutory nature" does not mark the consummation of an agency action, Bennett, 520 U.S. at 178, the Court's decision

---

[3]To support their arguments on both the consummation and the legal consequences prongs, Plaintiffs seem to rely on the apparent stipulation by the parties in a proposed order of dismissal that the letter to OXY initiated an audit. See Appellants' App., Vol. II, Doc. 12 at 479. We point out that the district court never signed the proposed order containing this stipulation. Further, the document request letter states only that the MMS "plan[ned] to initiate this audit no later than 30 days from [OXY's] receipt of this letter." Id. at 343. Thus, while we accept that the letter notified OXY that an audit would be commenced, the unsigned stipulation by the parties has no bearing on whether the letter initiated the audit or was the consummation of the MMS' decisionmaking process.

in FTC v. Standard Oil Co. of Cal., 449 U.S. 232 (1980), further elucidates what type of action may constitute the consummation of the agency decisionmaking process. In Standard Oil, the Court held that the FTC's issuance of a complaint averring that it had reason to believe that eight major oil companies were violating the Federal Trade Commission Act was not final agency action. See id. at 246. The Court reasoned that the FTC's averment of "reason to believe" that the oil companies were violating the FTCA was "not a definitive statement of position [but instead] represent[ed] a threshold determination that further inquiry [was] warranted and that a complaint should initiate proceedings." Id. at 241. The Court then determined that, because the issuance of the complaint served only to initiate the proceedings by which a definitive agency position could become known, the complaint had no legal force or practical effect that was comparable to the regulation at issue in Abbott Laboratories, 387 U.S. at 151-53 (holding that regulations issued by Commissioner of Food and Drugs were ripe for review because they were definitive, immediately effective, and directly and immediately affected petitioners' daily business activities). See Standard Oil, 449 U.S. at 241-43.

We think the posture of the MMS letter is strikingly similar to that of the FTC complaint in Standard Oil. Rather than consummating any agency decisionmaking process, the letter merely asked OXY to keep its records for the

-11-

audit period, requested access to all documents and information in OXY's possession relating to crude oil production and disposition for the audit period, and notified OXY that the MMS intended to initiate an audit. At best, the letter served only to initiate further proceedings by which the MMS could determine whether Plaintiffs owed royalties. For this reason, we agree with the district court that the letter represents a tentative or interlocutory action.

Plaintiffs' claim that the letter was final agency action because it initiated the audit does not change our analysis. Even assuming that the MMS made a decision to begin the audit process, Standard Oil makes clear that not every decision made by an agency qualifies as the type of decisionmaking which is evaluated for ripeness purposes. See id. at 241-42. Thus, even if the letter did initiate an audit, it still did not consummate the type of decisionmaking process envisioned by the Supreme Court in Abbott Laboratories and Standard Oil as final agency action. Circuit courts interpreting the Supreme Court standards have not found agency decisionmaking processes similar to the action taken in this case to be final. See Veldhoen, 35 F.3d at 225 (stating that, in a case involving a marine casualty reporting and investigation, "[a]n agency's initiation of an investigation does not constitute final agency action"); CEC Energy Co. v. Public Serv. Comm'n, 891 F.2d 1107, 1110 (3d Cir. 1989) (concluding that agency's determination that it had jurisdiction to investigate a public utility contract was

not definitive but was merely a determination to commence an investigation); Aluminum Co. of Am. v. United States, 790 F.2d 938, 941 (D.C. Cir. 1986) ("It is firmly established that agency action is not final merely because it has the effect of requiring a party to participate in an agency proceeding."). Under FOGRMA, we think such definitive decisionmaking processes would include, for example, enforcing an order or subpoena for records or determining royalties owed as a result of an audit and requiring OXY to pay such royalties, neither of which occurred in the MMS letter here. See 30 U.S.C. § 1711(a) (indicating that primary duties under FOGRMA are to determine royalties and other payments owed and to collect and account for such amounts in a timely manner). We therefore hold that the letter constituted no more than "a threshold determination that further inquiry [in the form of an audit was] warranted." Standard Oil, 449 U.S. at 241.

Because we have determined that the MMS' July 1996 letter to OXY was not the consummation of the agency's decisionmaking process, we need not analyze the second prong of the finality determination which asks whether the letter imposes legal obligations or consequences on Plaintiffs. See Bennett, 520 U.S. at 177 (stating that the "two conditions must be satisfied for agency action to be 'final'"). Thus, we hold that the MMS letter to OXY did not constitute final agency action.

-13-

Although our analysis with respect to the document request letter would normally end here because Plaintiffs cannot satisfy both prongs of the finality test under Bennett, we will briefly address Plaintiffs' argument that their claims are reviewable because there is no other adequate remedy under the APA. We believe Plaintiffs' reasoning is flawed. Simply put, the course of events in this case indicates that Plaintiffs already have pursued the remedy available to them, i.e., they refused to provide Defendants with the information requested in the MMS letter. In response to Plaintiffs' refusal to meet the letter's requests, Defendants issued an administrative subpoena under 30 U.S.C. § 1717 to legally force Plaintiffs to provide the requested information. A request for information followed by a subpoena is exactly the procedure authorized by 30 U.S.C. §§ 1713(a) and 1717(a). Subpoena recipients may then obtain judicial review by simply refusing to comply with the subpoenas and forcing the MMS to bring subpoena enforcement actions.[4] See 30 U.S.C. § 1717(b). Should Defendants file a proper enforcement action, we think the law provides Plaintiffs with every opportunity to contest the validity of the underlying audit and of the document request letter as they pertain to the enforcement of the administrative subpoena.[5]

[4]In this case, Defendants may refile an enforcement action in the appropriate federal court to compel compliance because the prior action filed in the Central District of California was dismissed without prejudice.

[5]It is worth noting that Plaintiffs also have successfully availed themselves

(continued...)

-14-

See Belle Fourche Pipeline Co. v. United States, 751 F.2d 332, 334 (10th Cir. 1984) (interpreting Reisman v. Caplin, 375 U.S. 440, 449 (1964), for the proposition that an adequate legal remedy exists because the investigated party may challenge the validity of the subpoena on any appropriate ground in a subsequent enforcement hearing), cert. denied, 474 U.S. 818 (1985).

In summary, Plaintiffs not only have pursued the proper procedure and remedies available under FOGRMA by refusing to comply with the document request letter and with the subsequent subpoena but they also possess additional opportunities to assert their rights and arguments in an enforcement action, should Defendants file one. Accordingly, we conclude that FOGRMA provided Plaintiffs with an adequate legal remedy or remedies under the APA, and we reiterate our holding that the MMS letter to OXY did not constitute final agency action.

## 2. Administrative Subpoena

Although the Bennett framework applies in theory to an evaluation of the finality of an administrative subpoena, courts are generally guided first by the principle against pre-enforcement review when a party seeks injunctive relief

---

[5](...continued)
of their legal remedy of challenging the audit by contesting administrative orders to pay royalties that had been issued by the MMS. See OXY USA, Inc. v. Babbitt, No. 96-C-1067-K, 1997 WL 910381 (N.D. Okla. Sept. 23, 1997).

from an agency subpoena: "Where an agency must resort to judicial enforcement of its subpoenas, courts generally dismiss anticipatory actions filed by parties challenging such subpoenas as not being ripe for review because of the availability of an adequate remedy at law if, and when, the agency files an enforcement action." In re Ramirez, 905 F.2d 97, 98 (5th Cir. 1990) (citing cases suggesting that party wishing to challenge enforceability of administrative subpoena should refuse to comply with subpoena and await enforcement action by issuing agency). Because administrative subpoenas issued by the MMS pursuant to 30 U.S.C. § 1717 are not self-executing,[6] to enforce subpoenas, the agency "must seek an order from a federal district court compelling compliance with . . . [them]." Belle Fourche, 751 F.2d at 334; see 30 U.S.C. § 1717(b).

Mindful of this principle, we proceed to Plaintiffs' argument that the district court erred in characterizing their action as an anticipatory challenge. They assert that review of their claims for injunctive relief would not be "pre-enforcement" review because the MMS already has effectively enforced the

---

[6]In connection with any hearings, inquiry, investigation, or audit conducted under the auspices of the FOGRMA, the Secretary of the Interior is authorized "to require by subpena [sic] the attendance and testimony of witnesses and the production of all . . . documents . . . , as the Secretary may request." 30 U.S.C. § 1717(a)(3). In the event of a refusal to obey a subpoena and "upon application of the Attorney General at the request of the Secretary and after notice to" the person refusing to obey, the statute grants jurisdiction to any district court of the United States in which the person is found, resides, or transacts business to compel compliance with the subpoena. Id. § 1717(b).

subpoena by filing an enforcement action in a California federal court and by issuing Plaintiffs orders to pay royalties. Plaintiffs also contend that the court erred in concluding that under § 1717(b) an enforcement action initiated in the Central District of California did not confer jurisdiction on its own court, i.e., the Northern District of Oklahoma. They contend that this narrow interpretation improperly allows the MMS to forum-shop in enforcing its subpoenas.

We think the statutory language of 30 U.S.C. § 1717 speaks for itself. The statute clearly indicates that the district court only has jurisdiction to enforce a subpoena "upon application of the Attorney General at the request of the Secretary," 30 U.S.C. § 1717(b), assuming that general requirements of venue and jurisdiction are satisfied. This language succinctly implies that only the district court *in which the action is filed* has jurisdiction over that action. A review of the legislative history confirms that the choice of where to file an enforcement action belongs to the Secretary of the Interior. To this effect, the committee reports reveal that Congress "intended that the Secretary have broad enforcement authority relating to his royalty and lease management functions." See H.R. REP. NO. 97-859, at 32 (1982), reprinted in 1982 U.S.C.C.A.N. 4268, 4286; see also Phillips Petroleum Co. v. Lujan, 951 F.2d 257, 260 (10th Cir. 1991) (Phillips I) (indicating that "administrative agencies vested with investigative power," such as the Department of the Interior, "have broad discretion to require the disclosure

of information concerning matters within their jurisdiction"). Thus, we agree with the district court that the MMS is authorized to choose when and where to file an enforcement action, subject to constraints imposed by reasonableness and the usual jurisdictional requirements. Because the MMS did not file an enforcement action in the Northern District of Oklahoma, the court correctly concluded that it did not have jurisdiction to ascertain the validity of the subpoena.

Further, as we concluded above, Plaintiffs' argument that they have no alternative adequate remedy is without merit. Plaintiffs pursued the remedy available under 30 U.S.C. § 1717 by refusing to produce the subpoenaed documents and thereby forcing Defendants to file an enforcement action to compel compliance with the subpoena. See 30 U.S.C. § 1717(b). Thus, judicial review is available to Plaintiffs if and when Defendants refile an enforcement action in the appropriate federal district court. We therefore hold that Plaintiffs "possess[] an adequate legal remedy and [are] not exposed to the type of immediate . . . injury necessary to justify jurisdiction." Belle Fourche, 751 F.2d at 335.

In light of our conclusion that the district court properly determined that it did not have jurisdiction to address an anticipatory challenge to the subpoena, we reject Plaintiffs' remaining arguments that the subpoena consummated the agency

decisionmaking process and imposed legal obligations which would make it ripe for review and that Defendants' California enforcement action and orders to pay are essentially a counterclaim which supplies the court with an independent ground for jurisdiction. We now turn to Plaintiffs' argument that their claims are ripe because final agency action is not needed in this case.

## 3. Exception to the Requirement of Finality

Plaintiffs argue that the district court may exercise jurisdiction under Leedom v. Kyne, 358 U.S. 184 (1958), because the MMS exceeded its statutory authority by initiating the audit, requiring Plaintiffs to maintain records beyond the six-year period specified in 30 U.S.C. § 1713(b), and subpoenaing records more than six years old. In Kyne, the Supreme Court held that the federal district court had jurisdiction to review a National Labor Relations Board action despite a statutory provision intended to preclude such review because the agency had acted "in excess of its delegated powers and contrary to a specific prohibition in the [National Labor Relations] Act." Kyne, 358 U.S. at 188. "In considering whether to proceed under Kyne, courts have emphasized that the case provides an exception of 'very limited scope,' to be 'invoked only in exceptional circumstances.'" United States Dep't of Interior v. FLRA, 1 F.3d 1059, 1061 (10th Cir. 1993) (citations omitted); see also Boire v. Greyhound Corp., 376 U.S.

473, 481 (1964) ("The Kyne exception is a narrow one.").  According to this court's interpretation of Kyne,

> agency action will only fall within the exception created by Kyne when the agency's determination is "made in excess of its powers," when the agency "disobeyed the express command of [its organic act] . . . and in doing so . . . acted in excess of its powers," when the agency order is "an attempted exercise of power that had been specifically withheld," and when it is "agency action taken in excess of delegated powers."

United States Dep't of Interior, 1 F.3d at 1061 (quoting Kyne, 385 U.S. at 185, 186-87, 189, 190).

Plaintiffs claim that Kyne applies here because the challenged subpoena was issued solely for purposes of an audit which Plaintiffs allege is in contravention of statutory limits on the agency's authority.  Specifically, they assert that under Phillips Petroleum Co. v. Lujan, 4 F.3d 858 (10th Cir. 1993) (Phillips III), the audits and subpoenas are illegal because the MMS is barred from initiating an audit and requesting records more than six years old.  Plaintiffs contend that Phillips III stands for the proposition that an audit begun more than six years after the relevant records were generated is per se unlawful.  To support their argument, they rely on the court's statement in Phillips III that "it is clear that if the government fails to initiate an audit within six years after the records were generated, the delay is per se unreasonable."  Id. at 864.  Reading this language in the context within which it was stated and in conjunction with the

holdings of <u>Phillips I</u> and <u>Phillips III</u>, we think Plaintiffs' assertion is wide of the mark.

First, this language is dictum. It was not directly related to the facts or the holding of the case, and it was simply intended to guide the district court's determination on remand. The critical question in <u>Phillips III</u> was when a cause of action to recover unpaid royalties should accrue under 28 U.S.C. § 2415(a). See <u>id.</u> at 859. Answering this question, the court held that the government's right of action under 28 U.S.C. § 2415(a) accrues "on the date the contract was breached, which was the date the royalties were due and payable." <u>Id.</u> at 861. In response to the government's claim that the statute of limitations was tolled under 28 U.S.C. § 2416(c) until the government completed its audit, the court held that the statute of limitations would be tolled until completion of an audit only if "facts material to the right of action [were] not known and reasonably could not be known without the audit, and [if] the audit was completed within a reasonable time after the deficient royalty payment." <u>Id.</u> at 863 (internal quotation marks omitted). The <u>Phillips III</u> court reversed the district court's decision barring the government's claims and remanded for an evidentiary hearing on the tolling question to determine whether the government knew or reasonably should have known about the allegedly deficient royalty payment. See <u>id.</u> With respect to the remand order, the court then advised the district court to consider FOGRMA in

-21-

making its determination. In this limited scope, the court warned that "if the government fails to initiate an audit within six years after the records were generated," id. at 864, then the government's delay will not invoke the *tolling* of the six-year statute of limitations to pursue an *action to collect unpaid royalties* under 28 U.S.C. § 2415. See id. at 864. Conversely, Phillips III did *not* say that a six-year delay would prohibit the MMS from requiring a lessee to retain documents or to disclose documents beyond the six-year period required in 30 U.S.C. § 1713(b) in connection with an *audit*.

Our clarification of Phillips III is supported by the language of § 1713(b). This section of FOGRMA specifically authorizes the Secretary to order a lessee to maintain documents "for a [period] longer" than the mandatory six years. 30 U.S.C. § 1713(b). Additionally, this court's decision in Phillips I ratifies Defendants' contention that the MMS has the authority to seek and require Plaintiffs to retain and disclose documents more than six years old which were voluntarily maintained by Plaintiffs prior to the audit.

Phillips I specifically addressed whether the Secretary of the Interior and the MMS had the authority to order an oil and gas lessee to provide eight-year-old records in connection with an audit. See Phillips I, 951 F.2d at 259-60. The court clearly held that the defendants possessed that authority. Reversing the district court's grant of summary judgment to the plaintiff-lessee, the court

-22-

determined that neither the six-year record-keeping requirement of 30 U.S.C. § 1713(b) nor the six-year statute of limitations on actions to collect royalty payments under 28 U.S.C. § 2415 precludes the MMS from seeking, and the lessee from disclosing, information that is more than six years old. See id. at 260-61. The court also stated that "[a]dministrative agencies vested with investigatory power have broad discretion to require the disclosure of information concerning matters within their jurisdiction," id. at 260, and that the "[d]efendants' investigatory power *is* their power to audit records maintained by [oil and gas] lessees." Id. at 260 n.6. Phillips I further noted that "by giving the Secretary the authority to unilaterally extend the period for retaining records, Congress has recognized that [§ 1713(b)'s] six-year limitation is not absolute." Id. at 260 n.5.

Consequently, we think that the mention in Phillips III of a "per se unreasonable delay" related only to the court's advice to the district court concerning the tolling of the six-year statute of limitations under 28 U.S.C. § 2415 in an action to recover unpaid royalties. While this case does not require us to decide whether Defendants have imposed upon Plaintiffs the obligation to retain their records for more than six years, it is plain under Phillips I that even if Defendants had imposed such an obligation they would not have contravened their statutory mandate. Because "'this dispute is over the agency's interpretation of

-23-

its statute and the regulations, an activity to which courts generally grant deference to agencies,'" Appellants' App., Vol. II, Doc. 23 at 915 (quoting Veldhoen, 35 F.3d at 226), and because the MMS has not "acted in excess of its powers," Kyne, 358 U.S. at 187, we hold that the case before us does not present the type of extraordinary circumstances necessary to invoke the narrow exception established in Kyne. "An attack on the authority of an agency to conduct an investigation does not obviate the final agency action requirement." Veldhoen, 35 F.3d at 225.

**B. Direct and Immediate Impact**

Turning to the third ripeness consideration, neither the document request letter nor the administrative subpoena has an appreciable direct and immediate impact upon Plaintiffs. While the second prong of the Bennett finality analysis generally requires the court to examine whether any legal consequences arise from the agency action, the approach to the third prong of the ripeness doctrine is a broader one, focusing on financial and operational impacts as well as on legal ones. We begin by comparing the effects of the letter and the subpoena on Plaintiffs with the effects of the obligations imposed on the petitioner in the seminal case on this point, namely, Abbott Laboratories. In that case, the petitioner was forced to choose between costly compliance with food and drug

-24-

regulations and severe criminal and civil penalties for noncompliance. In determining that the petitioner's claims were ripe, the Court found that the required changes in products and the costs associated with ensuring compliance and preventing civil and criminal prosecution for noncompliance constituted direct and immediate impacts on petitioner's daily business. See Abbott Lab., 387 U.S. at 152-53.

The document request letter and subpoena have no immediate substantial impact upon Plaintiffs similar to the burdens described in Abbott Laboratories. Plaintiffs' refusal to comply with the document request letter itself evidences the letter's lack of impact. The letter did not force Plaintiffs to disclose any information; it merely requested that they cooperate with the investigation. Even after the MMS served Plaintiffs with an administrative subpoena, Plaintiffs still did not suffer any immediate or substantial effect for refusing to comply with it.[7] Any "consequences" Plaintiffs claim to have suffered or to be suffering as a result of their procedural wrangling with Defendants do not constitute direct and immediate impacts because they do not impose any appreciable obligations upon

_____

[7]If Defendants were to file a proper enforcement action to obtain the subpoenaed information, Plaintiffs likely could more readily show the type of effects which Abbott Laboratories envisioned. However, while we think the distinction between pre- and post-enforcement impacts is an important one, we do not answer today whether post-enforcement impacts would in fact satisfy the Abbott Laboratories standard.

their daily business.  See CEC Energy, 891 F.2d at 1110-11 (stating that agency's action determining jurisdiction only imposed obligation to respond to agency's further inquiries); cf. Standard Oil, 449 U.S. at 243 (determining that agency's issuance of complaint had no impact "other than the disruptions that accompany any major litigation").

Further, we do not think Plaintiffs' alleged burden of having to retain information more than six years old is the type of consequence which, standing alone, creates ripeness.  Not only does this type of burden arise from every audit requiring records to "be maintained for a [period] longer" than six years, 30 U.S.C. § 1717(b), but, like the obligation of having to disclose documents, merely being required to retain information does not impose the type of costs or the potential for severe criminal penalties recognized in Abbott Laboratories.  Additionally, because the MMS has avowed not to pursue penalties against Plaintiffs under 30 U.S.C. § 1719(c)(2), there is no merit to Plaintiffs' argument that such penalties would have a substantial and severe impact upon them.  For these reasons, we are not persuaded that the document request letter and the administrative subpoena expose Plaintiffs to the type of direct and immediate "injury necessary to justify jurisdiction."  Belle Fourche, 751 F.3d at 335.

## C.  Agency Enforcement and Administration

The fourth and final factor in the ripeness analysis asks whether the resolution of the issues will promote effective enforcement and administration by the agency. We agree with the Government's assessment that judicial review of the MMS letter, which we have concluded does not constitute final agency action, would cause substantial disruption to the administrative process. See Appellees' Br. at 18. As noted above, Plaintiffs' allegation of harm–that they are illegally forced to retain records for a period beyond the six-year period stated in 30 U.S.C. § 1713(b)–is the type of obligation which accompanies many audits and investigations under FOGRMA. If such an allegation of harm was sufficient to justify review of an agency's decision to initiate an audit and request documents, "courts would constantly be reviewing such decisions," CEC Energy, 891 F.2d at 1111, and the MMS' ability to conduct audits would be unreasonably hampered. Cf. Abbott Lab., 387 U.S. at 148 (noting that ripeness doctrine is intended to prevent courts from unnecessarily intervening in administrative decisionmaking). Additionally, because further agency action is needed to enforce the administrative subpoena, we think that any action by the courts at this stage would impede the agency's ability to pursue the prescribed administrative processes.

**IV.**

In conclusion, we hold that neither the document request letter nor the administrative subpoena is ripe for review. We therefore AFFIRM the district court's grant of summary judgment to Defendants for lack of subject matter jurisdiction.