**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**March 2, 2010**

**TENTH CIRCUIT**

**Elisabeth A. Shumaker**
**Clerk of Court**

POTASH ASSOCIATION OF NEW
MEXICO,

      Plaintiff–Appellant,

v.

UNITED STATES DEPARTMENT OF
THE INTERIOR; KENNETH SALAZAR,[*]
in his official capacity as Secretary of the
United States Department of the Interior;
OFFICE OF HEARING AND APPEALS,
INTERIOR BOARD OF LAND APPEALS;
UNITED STATES BUREAU OF LAND
MANAGEMENT, an agency within the
Department of the Interior; LINDA
RUNDELL, in her official capacity as State
Director of the New Mexico State Office of
the Bureau of Land Management,

      Defendants–Appellees.

------------------------------

POGO PRODUCING COMPANY; YATES
PETROLEUM CORPORATION,

      Intervenors–Appellees.

No. 08-2260
(D.C. No. 1:06-CV-01190-MCA-ACT)
(D. N.M.)

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Kenneth Salazar is substituted as
Defendant–Appellee for former Secretary of the United States Department of the Interior
Dirk Kempthorne.

## ORDER AND JUDGMENT[**]

Before **LUCERO**, **McKAY**, and **HARTZ**, Circuit Judges.

This proceeding was commenced by the Potash Association of New Mexico ("PANM") by filing suit in the United States District Court for the District of New Mexico seeking review of an opinion of the Interior Board of Land Appeals ("IBLA"). Concluding that it lacked subject matter jurisdiction over PANM's suit because the IBLA opinion did not constitute final agency action under the Administrative Procedure Act ("APA"), the district court denied relief. See 5 U.S.C. § 704. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

"Potash" refers to potassium compounds that are used principally as an element in fertilizer. Certain lands in New Mexico administered by the Bureau of Land Management ("BLM") known as the Potash Area contain both potash deposits and oil and gas. Some of this oil and gas is located in fields below potash deposits. In order to exploit the petroleum resources, drilling through the potash is necessary. This renders potash near the well inaccessible. Drilling for oil and gas in the vicinity of potash mines

---

[**] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

also raises concerns that well casings will leak hydrocarbons into potash mines. PANM argues the leaks are damaging and potentially explosive. Because of these risks, potash producers and the oil and gas industry have long been at odds over the proper development of the Potash Area.

In 1986, the Secretary of the Interior published an order setting forth regulations to govern both potash and oil and gas development in the Potash Area. See Oil, Gas and Potash Leasing and Development Within the Designated Potash Area of Eddy and Lea Counties, New Mexico, 51 Fed. Reg. 39,425 (Oct. 28, 1986) (the "1986 Order"), corrected 52 Fed. Reg. 32,171 (August 26, 1987). The 1986 Order articulated four "stipulations" that must be included in all leases for oil and gas drilling within the Potash Area. Three stipulations are relevant to this appeal:

1.  Drilling for oil and gas shall be permitted only in the event that the lessee establishes to the satisfaction of the authorized officer, Bureau of Land Management, that such drilling will not interfere with the mining and recovery of potash deposits, or the interest of the United States will best be served by permitting such drilling.

2.  No wells shall be drilled for oil or gas at a location which, in the opinion of the authorized officer, would result in undue waste of potash deposits or constitute a hazard to or unduly interfere with mining operations being conducted for the extraction of potash deposits.

    ***

4.  The drilling or the abandonment of any well on said lease shall be done in accordance with applicable oil and gas operating regulations (43 CFR 3160), including such requirements as the authorized officer may prescribe as necessary to prevent the infiltration of oil, gas or water into formations containing potash deposits or into mines

or workings being utilized in the extraction of such deposits.

51 Fed. Reg. at 39,425. Procedures were also established by the 1986 Order for identifying "potash enclaves" in which "potash ore is known to exist in sufficient thickness and quality to be mineable under existing technology and economics." Id. With certain exceptions, the 1986 Order established a policy "to deny approval of most applications for permits to drill oil and gas test wells from surface locations within the potash enclaves." Id.

In the early 1990s, Yates Petroleum Corporation, Pogo Producing Company, and a third operator filed dozens of Applications for Permits to Drill ("APDs"), seeking permission to drill in the Potash Area. The BLM denied the APDs on the ground that drilling would "render the mining of potash unsafe and ultimately uneconomic, thereby constituting an undue waste of the potash resource and violating the rules for oil, gas, and potash leasing and development within the designated Potash Area." Yates Petroleum Corp., 131 I.B.L.A. 230, 231 (1994). This decision was appealed to the IBLA, which set aside the denials and referred the matter for a hearing before an administrative law judge ("ALJ"). See id. at 240. It directed further inquiry on two issues: (1) "whether the APD's [sic] encompass lands within areas qualifying as potash enclaves"; and (2) "whether approving the APD's [sic] would result in undue waste of potash deposits or constitute a hazard to or unduly interfere with mining operations being conducted for the extraction of potash deposits." Id. at 235-26 (quotation omitted).

Eighty days of hearings followed in 1996 and 1997, during which seventy-two

- 4 -

APDs were considered. Testimony was received from thirty-seven witnesses. PANM participated in the hearing as an intervenor. In July 2003, the ALJ delivered a 15,000-page transcript, along with a 247-page final order—In re Yates Petroleum Corp., IBLA 92-612 (July 7, 2003) ("ALJ Decision"). She concluded that the BLM misapplied the stipulations contained in the 1986 Order and remanded most of the APDs at issue to the BLM for reconsideration and fact finding.[1] All parties appealed to the IBLA, which affirmed the ALJ's order. See IMC Kalium Carlsbad, Inc., 170 I.B.L.A. 25, 55 (2006).

PANM then filed suit in federal district court challenging the IBLA's opinion pursuant to the APA. The district court sua sponte concluded that it lacked jurisdiction because the IBLA's opinion did not constitute "final agency action." See 5 U.S.C. § 704. PANM timely appealed.

## II

We review de novo a district court's dismissal for lack of subject matter jurisdiction. See High Country Citizens Alliance v. Clarke, 454 F.3d 1177, 1180 (10th Cir. 2006). Under the APA, federal courts have jurisdiction to review "final agency action." 5 U.S.C. § 704; see Colo. Farm Bureau Fed'n v. U.S. Forest Serv., 220 F.3d 1171, 1173 (10th Cir. 2000). For agency action to be "final," it: (1) "must mark the consummation of the agency's decision-making process"; and (2) "must be one by which rights or obligations have been determined, or from which legal consequences will flow."

---

[1] The disposition of the remaining APDs is not relevant to this appeal.

Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (quotation omitted).[2]

PANM apparently asserts that both the IBLA order as a whole and a specific portion of that order, which it calls the "Safety Ruling," constitute final agency action. We disagree as to both.[3]

## A

With respect to the entire IBLA opinion, PANM advances several arguments in support of its "final agency action" position. First, PANM argues that IBLA decisions categorically constitute "final agency action." It correctly notes that 43 C.F.R. § 4.403 provides: "A decision of the [IBLA] shall constitute final agency action and be effective upon the date of issuance, unless the decision itself provides otherwise."[4]

---

[2] PANM contends the district court erred because it failed to apply the proper standard to determine if all or part of the IBLA opinion constitutes final agency action. On appeal, we affirm the district court's order applying the standard urged by all parties and therefore need not determine if the standard applied by the district court was incorrect. Cf. Colo. Prop. Acquisitions, Inc. v. United States, 894 F.2d 1173, 1175 n.5 (10th Cir. 1990).

[3] PANM asserts that none of the parties argued the finality issue before the district court. However, "[f]ederal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party, and thus a court may sua sponte raise the question of whether there is subject matter jurisdiction at any stage in the litigation." 1mage Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1048 (10th Cir. 2006) (quotations omitted).

[4] PANM further notes that 43 C.F.R. § 4.1 authorizes the IBLA to determine "as fully and finally as might the Secretary, matters within the jurisdiction of the Department" and to "decide[]finally for the Department appeals to the head of the Department from decisions rendered by Departmental officials relating to . . . [t]he use and disposition of public lands and their resources." 43 C.F.R. § 4.1, 4.1(b)(3). Within

Continued . . .

However, the IBLA opinion is not final agency action because it "provides otherwise." Specifically, the IBLA opinion does not consummate the agency's decision-making process with respect to the APDs at issue.[5] Bennett, 520 U.S. at 177-78. We have specifically held that an agency action is not final—and thus not reviewable—if it serves to "initiate further proceedings" necessary for a final determination of the parties' rights. Mobil Exploration & Producing, U.S., Inc. v. Dep't of Interior, 180 F.3d 1192, 1198 (10th Cir. 1999). Several of our sibling circuits have similarly held that a remand within an agency does not consummate agency action when the agency has not definitively resolved the merits of the case. See Exxon Chems. Am. v. Chao, 298 F.3d 464, 467 (5th Cir. 2002); Dir., Office of Workers' Comp. Programs v. Bath Iron Works Corp., 853 F.2d 11, 14 (1st Cir. 1988) (construing an analogous finality requirement found in 33 U.S.C. § 921(c)); Wash. Metro. Area Transit Auth. v. Dir., Office of Workers' Comp. Programs, 824 F.2d 94, 95 (D.C. Cir. 1987) (same).

In the present case, the IBLA affirmed the ALJ's order remanding the APDs for reconsideration and necessary fact finding. IMC Kalium Carlsbad, Inc., 170 I.B.L.A. at 55. This will require the BLM to engage in further fact finding before it can make final determinations regarding the APDs. PANM will have the opportunity to argue that the

the Department of the Interior, appeals are not available from IBLA decisions. 43 C.F.R. § 4.21(d).

[5] Because the IBLA order fails the first step of the Bennett analysis, we need not address whether legal consequences will flow from the order and thus whether it succeeds at the second step of Bennett.

APDs should not be granted, and the BLM may deny the APDs once again. Because the IBLA opinion did not consummate the agency's decision-making process with respect to the APDs, the district court lacked jurisdiction to consider PANM's appeal from the IBLA opinion.

**B**

We further conclude that a portion of the IBLA order that PANM refers to as the "Safety Ruling" does not constitute final agency action in and of itself because it does not consummate the agency's decision-making process.

PANM identifies the following portion of the IBLA opinion as the Safety Ruling[6]:

> Collectively considering the first, second, and fourth oil and gas lease stipulations, we conclude that APDs may be denied if BLM determines that contamination will occur (i.e., infiltration caused by oil and gas drilling cannot be prevented) and then determines that the physical presence of this contamination will interfere with potash mining, result in undue potash waste, or constitute a hazard to potash mining.

IMC Kalium Carlsbad, Inc., 170 I.B.L.A. at 52 (footnote omitted). PANM asserts that the Safety Ruling consummates a distinct agency decision-making process because it articulates a new policy misinterpreting the 1986 Order by altering the burden and standard of proof used in evaluating APDs.

We disagree. First, we reject PANM's implication that we may read the Safety Ruling in isolation from the remainder of the IBLA's opinion. "[A] court does not

---

[6] Other parties to this appeal object to PANM's characterization. We use PANM's phrase by way of shorthand only.

review language in a judicial or administrative opinion divorced from formal orders. We review judgments (and orders), not words." CH2M Hill Cent., Inc. v. Herman, 131 F.3d 1244, 1247 (7th Cir. 1997). The Safety Ruling concludes a section of the IBLA opinion discussing various provisions of the 1986 Order and the agency's interpretation of it. Construing a single paragraph detached from its context risks misinterpreting it.

Second, PANM's challenge is unlike Pennaco Energy, Inc. v. U.S. Department of the Interior, 377 F.3d 1147 (10th Cir. 2004), a case upon which PANM heavily relies. In Pennaco, we recognized that an IBLA remand to the BLM consummates the agency's decision-making process when the remand includes a "definitive statement of [the agency's] position" that completes a "distinct decision-making process." Id. at 1155. There, the BLM issued three oil and gas leases after concluding that two existing analyses satisfied the obligations of the National Environmental Policy Act ("NEPA"). Id. at 1152. A pair of environmental groups filed a formal protest with the BLM arguing that NEPA required the agency to prepare a new environmental impact statement. Id. at 1152-53. After the BLM rejected their challenge, the groups appealed to the IBLA, which ruled that the BLM's analysis was insufficient under NEPA. Id. at 1153-54. The IBLA remanded to the BLM to conduct the required analysis. Id. at 1150. Thus the environmental groups initiated a distinct decision-making process by filing a formal complaint. Id. at 1152-53. At the time suit was filed in the district court, that distinct process was complete. The environmental groups had obtained their requested relief—a remand to the agency with directions to comply with NEPA.

PANM argues that the Safety Ruling is final despite the remand to the BLM because IBLA holdings bind the BLM. Although this argument could show that the Safety Ruling was a "definitive statement of [the IBLA's] position," it does not address the requirement that the ruling mark "the consummation of a distinct decision-making process." Id. at 1155. PANM has entirely failed to identify any distinct process that led to the Safety Ruling. To the contrary, the record is clear that the Safety Ruling was simply a small step in the much larger process of determining whether to grant the APDs at issue: When the BLM denied those APDs, the jilted applicants appealed to the IBLA, which eventually remanded to the BLM for further fact finding. Because the BLM has yet to act on that remand, the administrative process is not yet complete—we do not yet know whether the APDs will be granted. Accordingly, PANM has not demonstrated that the Safety Ruling marks "the consummation of a distinct decision-making process" such that it may be treated as final agency action. Id. at 1155.[7]

Third and finally, PANM argues that if the BLM ultimately denies the APDs, then it will not have the opportunity to challenge the Safety Ruling. But that is precisely the point: This argument demonstrates that the Safety Ruling is not final. We do not review agency action if it "does not itself adversely affect complainant but only affects his rights

---

[7] Our reasoning here does not contravene the rule that we have jurisdiction to review an administrative order remanding a case within an agency when the order is subject to the collateral order doctrine. See Osage Tribal Council ex rel. Osage Tribe of Indians v. U.S. Dep't of Labor, 187 F.3d 1174, 1179-80 (10th Cir. 1999). In this case, none of the parties has argued the collateral order doctrine applies.

adversely on the contingency of future administrative action." Am. Airlines, Inc. v.

Herman, 176 F.3d 283, 287 (5th Cir. 1999) (quoting Rochester Tel. Corp. v. United

States, 307 U.S. 125, 130 (1939)). If the BLM denies the APDs on remand, PANM will

not be aggrieved. See City of Colo. Springs v. Climax Molybdenum Co., 587 F.3d 1071,

1079 (10th Cir. 2009) (plaintiff must suffer an injury that is "concrete and particularized"

and "actual or imminent" (quotation omitted)). If, however, the BLM approves the APDs

based on a reading of the 1986 Order that is arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law, see 5 U.S.C. § 706(2)(A), PANM may challenge

the final order in federal court.[8] Any PANM injury would be contingent on future BLM

decisions, thus demonstrating the lack of finality in this case.[9]

### III

For the foregoing reasons, we **AFFIRM** the district court's determination that it

---

[8] PANM also contends that if the BLM grants the APDs, the case may become moot if PANM is unable to obtain an order enjoining the BLM's approval. That the case may become moot in the future due to the hypothetical actions of the agency and another court, however, does not bear on the question of whether the Safety Ruling is final agency action.

[9] PANM also asserts that the Mineral Leasing Act's ninety-day statute of limitations demonstrates that the IBLA opinion completes an agency decision-making process. See 30 U.S.C. § 226-2. However, that statute applies only to "final decision[s] of the Secretary." Id. Thus, the statute has no bearing on the question of finality— PANM would only have to file a challenge to the Safety Ruling within ninety days of the IBLA opinion if it constituted a final agency decision regarding an oil and gas lease. Because we have concluded that neither the Safety Ruling nor the IBLA opinion constitutes a final agency decision, § 226-2's deadline does not apply.

lacks subject matter jurisdiction to review the IBLA's order remanding the APDs to the

BLM.


ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge