**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 22, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DEVON ENERGY PRODUCTION
COMPANY, L.P.,

> Plaintiff-Appellant,

v.

MOSAIC POTASH CARLSBAD,
INC., a Delaware Corporation,

> Defendant-Appellee.

No. 11-2026

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**1:10-CV-00665-JAP-RLP**

---

Harold L. Hensley, Jr., Hinkle, Hensley, Shanor & Martin, LLP, Midland, Texas,
for Plaintiff-Appellant.

Charles C. High, Jr., Kemp Smith LLP (Clara B. Burns and Jose A. Howard-
Gonzalez, Kemp Smith LLP, with him on the brief), El Paso, Texas, for
Defendant-Appellee.

---

Before **O'BRIEN**, **GILMAN**[*] and **HOLMES**, Circuit Judges.

---

**HOLMES**, Circuit Judge.

---

[*]     Honorable Ronald Lee Gilman, Circuit Court Judge, United States Court of
Appeals for the Sixth Circuit, sitting by designation.

Plaintiff-Appellant Devon Energy Production Company, L.P. ("Devon"), an oil and gas production company, appeals from the judgment of the United States District Court for the District of New Mexico, which dismissed Devon's declaratory-judgment action against Defendant-Appellee Mosaic Potash Carlsbad, Inc. ("Mosaic"), a potash mining company,[1] for lack of subject-matter jurisdiction. More specifically, under Federal Rule of Civil Procedure 57, Devon sought a declaratory judgment that federal law completely preempted Mosaic's anticipated state-law claims emanating from Devon's unauthorized drilling in a federally managed area of New Mexico known as the "Potash Area," and that the only remedies available to Mosaic were derived from the federal administrative and judicial remedies of the Administrative Procedure Act ("APA") and certain regulatory provisions of the U.S. Department of the Interior that govern oil, gas, and potash leasing and development within the Potash Area. Devon alleged that the district court had federal-question jurisdiction over its declaratory-judgment action under 28 U.S.C. § 1331.

The district court concluded that there was no federal-question jurisdiction to support Devon's action and dismissed its complaint, and subsequently denied

---

[1] "Potash" refers to potassium compounds that are used principally as an element in fertilizer. *Potash Ass'n of N.M. v. U.S. Dep't of Interior*, 367 F. App'x 960, 962 (10th Cir. 2010).

Devon's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) ("Rule 59(e) motion"). We affirm.

**I**

We start by describing the Potash Area that is at the center of this dispute. Eddy and Lea Counties in New Mexico contain vast amounts of subsurface potash and also oil and gas reserves. The U.S. Department of the Interior's Bureau of Land Management ("BLM") manages the Potash Area, which encompasses approximately 497,000 acres in Eddy and Lea Counties. In an effort to allow for the prospecting, development, and production of potash and oil and gas resources within the Potash Area, the BLM issues leases that allow various companies to mine potash and to drill for oil and gas.[2] To accomplish this goal, the BLM has implemented rules as outlined in the BLM's "1986 Secretarial Order," which was issued under the Mineral Leasing Act of 1920 ("MLA"), 30 U.S.C. §§ 181–196. *See* Oil, Gas and Potash Leasing and Development Within the Designated Potash Area of Eddy and Lea Counties, New Mexico, 51 Fed. Reg. 39,425 (Oct. 28, 1986), *corrected* 52 Fed. Reg. 32,171 (Aug. 26, 1987) (the "1986 Order").

---

[2] As a panel of this Court described in *Potash Association of New Mexico*, in the Potash Area, some of the oil and gas fields are located near or below potash deposits. 367 F. App'x at 962. Drilling for oil or gas resources near potash deposits can render those potash deposits inaccessible and also raises certain safety concerns. *See id.* For these reasons, potash producers and the oil and gas industry "have long been at odds over the proper development of the Potash Area." *Id.*

The 1986 Order contains provisions addressing the issuance of both potash and oil and gas leases. *See* 1986 Order § 3(III)(A), (C). Most relevant to this appeal are certain conditions imposed, by stipulation, on the recipients of oil and gas leases. The 1986 Order states that "[d]rilling for oil and gas shall be permitted only in the event that the lessee establishes . . . that such drilling will not interfere with the mining and recovery of potash deposits, or the interest of the United States will best be served by permitting such drilling." *Id.* § 3(III)(A)(1). Further, under the 1986 Order, "[n]o wells shall be drilled for oil or gas at a location which . . . would result in undue waste of potash deposits or constitute a hazard to or unduly interfere with mining operations being conducted for the extraction of potash deposits." *Id.* § 3(III)(A)(2).

In March of 2005, Devon submitted an Application to Permit Drilling ("APD") to the BLM to drill a new well in the Postash Area, which was labeled the "Apache Well." Aplt. App. at 127 (Dist. Ct. Mem. Op. & Order, filed Oct. 19, 2010). The BLM denied the APD because of "mining impact,"[3] but it informed Devon that it would approve the well if it were moved to a location

---

[3] The district court stated that the BLM "denied" Devon's APD, Aplt. App. at 127, but Devon asserts that the BLM only "advise[d] Devon that the well *would be denied* at that location," Aplt. Reply Br. at 9 (emphasis added); *see also* Aplt. App. at 5–6. This is an unhelpful exercise in semantics. For our purposes, this purported distinction is irrelevant because it is undisputed that, for a period of time, Devon drilled and operated the site without the BLM's approval and, in fact, the BLM had put Devon on notice that it would not receive the BLM's approval for that site.

-4-

between two previously drilled wells.  *Id.* at 5–6 (Compl., filed July 15, 2010); *see id.* at 127–28.  Devon agreed to move the Apache Well to the new location.  However, rather than drill at the approved location, Devon incorrectly placed the well at the *original* location that the BLM had never approved.

In February 2006, Devon discovered its mistake and reported it to the BLM.  Thereafter, Devon requested approval of the Apache Well, as drilled, in the original location.  The next month, after performing an environmental assessment, the BLM approved the Apache Well, as drilled.  Upon learning of Devon's mistake, Mosaic contacted Devon to assert that it had wasted mineable potash by drilling at the wrong location and caused Mosaic damages.  The parties attempted to negotiate their dispute, but eventually those discussions reached an impasse.

In July 2010, Devon filed suit against Mosaic in the United States District Court for the District of New Mexico seeking declaratory relief under Federal Rule of Civil Procedure 57.  In its complaint, Devon anticipated that Mosaic would file suit against it for money damages under state law, and therefore it sought a declaration that (1) "federal law has completely pre-empted all oil and gas and potash operations and activities with regard to the location and drilling of oil and gas wells and mining operations on the lands and leases involved in this controversy," and (2) "the only remedies available to Mosaic are the federal administrative and judicial remedies under the Administrative Procedure Act and

the Secretary of the Interior's 1986 Order . . . , none of which include any monetary claim for damages." Aplt. App. at 1–2. Devon asserted that the court had federal-question jurisdiction under 28 U.S.C. § 1331.

Mosaic responded by filing a motion to dismiss for lack of subject-matter jurisdiction. Mosaic argued that the district court lacked jurisdiction over Devon's claim because, as relevant here, the Complaint "fail[ed] to assert a federal question." Aplt. App. at 27 (Def.'s Rule 12(b)(1) Mot. to Dismiss for Lack of Subject Matter Jurisdiction, filed Aug. 11, 2010). Mosaic maintained that any federal issue that may arise would be only by way of a defense asserted by Devon, and that a defense was insufficient to support federal-question jurisdiction.

The district court agreed with Mosaic and dismissed Devon's complaint. It first concluded that the lack of any private cause of action in the MLA precluded a finding of complete preemption. It then rejected Devon's argument that the district court had "federal question jurisdiction because Mosaic's claims require[d] [it] to construe federal law." *Id.* at 136 (quoting Dist. Ct. Doc. No. 11, at 20 (Pl.'s Mem. in Resp. to Def.'s 12(b)(1) Mot. to Dismiss for Lack of Subject-Matter Jurisdiction, filed Aug. 26, 2011)) (internal quotation marks omitted). The district court noted that resolution of Mosaic's claims *would not* require a court to decide whether the BLM's approval of the Apache Well, as drilled, was improper because "approval is not an element of Mosaic's cause of action as it at most is

only a defense to Mosaic's state law claims." *Id*. at 136–37.

Following the district court's dismissal of Devon's complaint, Mosaic then filed its own complaint in New Mexico state court, raising state-law claims for trespass, negligence, and prima-facie tort. In response, Devon filed in federal court a Rule 59(e) motion to alter or amend the judgment, arguing that the district court should vacate its order because of two "new" pieces of evidence—namely, Mosaic's state-court complaint and documents that Devon had received from the BLM through a Freedom of Information Act ("FOIA") request which detailed the agency's decisionmaking process in approving the Apache Well site post-drilling. In its motion, Devon argued (again) that federal-question jurisdiction attached in that Mosaic's state-law claims "require[]" a construction and application of federal law because a court would have to "resolve the substantial federal question of whether Devon's entry onto the federally owned and managed land was unauthorized by the United States" and whether Mosaic suffered lost potash deposits as determined by federal law. Aplt. App. at 142 (Pl.'s Opposed Rule 59(e) Mot. & Br. to Alter or Amend the Court's Order Dismissing Pl.'s Compl., filed Nov. 16, 2010).

The district court denied Devon's motion. The court held that the substance—if not the specifics—of Devon's "new evidence" was already before the court when it rendered its original decision, and therefore did not warrant reconsideration. Further, it concluded that Devon's legal argument—related to

jurisdiction based on a substantial federal issue—was "improper under Rule 59(e)" because Devon was simply "attempting to 'relitigate old matters, or to raise arguments . . . that could have been raised prior to the entry of judgment.'" *Id.* at 292 (Mem. Op. & Order Den. Devon Energy Prod. Co.'s Rule 59(e) Mot., filed Jan. 24, 2011) (quoting *Exxon Shipping Co. v. Baker*, 544 U.S. 471, 485 n.5 (2008)); *see also id.* ("Devon appears to merely be using Rule 59(e) to fully develop an argument that it mentioned only in passing in its initial briefing on this issue in its Response to Mosaic's Motion to Dismiss.").

In an abundance of caution, however, the district court went on to consider the merits of Devon's claim. It acknowledged that, as Devon argued, the Supreme Court's decision in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005), set forth the appropriate jurisdictional test—namely, "does [the] state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Aplt. App. at 293 (quoting *Grable & Sons*, 545 U.S. at 314) (internal quotation marks omitted). Further, the district court noted that Mosaic's state-court complaint "certainly references federal law and points to a violation of federal law." *Id.* at 294. However, the court concluded that "there is no actual dispute over the meaning of the federal law such that [its] claims can be said to arise under federal law," *id.*, in that "the BLM's post-drilling approval

-8-

of the Apache Well may provide [at most] a federal defense to Mosaic's state-law causes of action," *id.* at 295.  This timely appeal followed.

## II

## A

We review de novo a district court's dismissal of a complaint for lack of subject-matter jurisdiction.  *See Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 983 (10th Cir. 2010); *Montoya v. Chao*, 296 F.3d 952, 954–55 (10th Cir. 2002) ("We review a dismissal for lack of subject-matter jurisdiction de novo . . . .").  Federal courts are "courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (internal quotation marks omitted); *accord United States v. Green*, 405 F.3d 1180, 1184 (10th Cir. 2005).  We "presume[] that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (citation omitted); *see Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005) ("Because the jurisdiction of federal courts is limited, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." (quoting *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999)) (internal quotation marks omitted)); *see also Raley v. Hyundai Motor Co.*, 642 F.3d 1271, 1275 (10th Cir. 2011) ("Where an

appellant fails to lead, we have no duty to follow. It is the appellant's burden, not ours, to conjure up possible theories to invoke our legal authority to hear her appeal.").

We typically review a district court's dismissal of a Rule 59(e) motion only for abuse of discretion. *See Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir. 2010) ("We review a district court's denial of a Fed. R. Civ. P. 59(e) motion for reconsideration under an abuse of discretion standard." (quoting *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009)) (internal quotation marks omitted)). However, "[t]he abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1178 (10th Cir. 2011) (quoting *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1275 (10th Cir. 2005)) (internal quotation marks omitted). Consequently, we are obliged to review the merits of purely legal jurisdictional arguments de novo in order to ensure that the district court did not abuse its discretion by making a "clear error of judgment or exceed[ing] the bounds of permissible choice in the circumstances." *Id*. (quoting *Loughridge*, 431 F.3d at 1275) (internal quotation marks omitted).

On appeal, Devon raises two overarching challenges. First, Devon argues that the district court erred in dismissing its complaint for lack of subject-matter jurisdiction. More specifically, it argues that federal jurisdiction exists under two

different theories: (1) Mosaic's state-law claims are completely preempted; and (2) a disputed, substantial federal-law question is embedded in Mosaic's state-law claims. Second, and related to the first challenge, Devon argues that the district court abused its discretion in denying Devon's Rule 59(e) motion because Devon presented "new and newly discovered crucial pieces of evidence" that bolstered its claim that federal subject-matter jurisdiction existed in this case. Aplt. Opening Br. at 37. Both challenges lack merit.

**B**

Devon is a plaintiff that seeks declaratory relief. However, the Declaratory Judgment Act "does not confer jurisdiction upon federal courts, so the power to issue declaratory judgments must lie in some independent basis of jurisdiction." *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 964 (10th Cir. 1996) (citations omitted). Thus, "in the absence of any pleading that invokes diversity jurisdiction, [ordinarily] the relevant basis is federal question jurisdiction under 28 U.S.C. § 1331." *Id.*

Under § 1331, federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "To determine whether [a] claim arises under federal law, [courts] examine the 'well[-]pleaded' allegations of the complaint and ignore potential defenses . . . ." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003); *accord Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006). Under the

"well-pleaded complaint" rule, "a suit arises under federal law 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law." *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996) (quoting *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908)); *see also* Erwin Chemerinsky, *Federal Jurisdiction* § 5.2.3, at 295 (6th ed. 2012) ("[I]t must be clear from the face of the plaintiff's complaint that there is a federal question."). This rule "makes the plaintiff the master of the claim." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *accord Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004). "By omitting federal claims from a complaint, a plaintiff can [generally] guarantee an action will be heard in state court." *Qwest Corp. v. City of Santa Fe*, 380 F.3d 1258, 1264 n.1 (10th Cir. 2004); *see also Felix*, 387 F.3d at 1154 (noting that federal-question jurisdiction exists when properly pleaded in a plaintiff's complaint).

The dynamics of the "well-pleaded complaint" rule change in the context of a declaratory-judgment action like this one, where "the position of the parties is . . . reversed[] [and] the plaintiff [Devon] asserts a defense to an anticipated action by the declaratory judgment defendant [Mosaic]." *Cardtoons*, 95 F.3d at 964. In this situation, "[i]t is the character of [Mosaic's] action, not [Devon's] defense, that determines whether there is federal question jurisdiction." *Id.*; *see Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 19 & n.19 (1983) ("Federal courts have regularly taken original jurisdiction over declaratory

-12-

judgment suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question.").  Keeping in mind that it is Mosaic's action that we are concerned with in this declaratory-judgment context, under the "artful pleading doctrine," Mosaic cannot thwart federal court jurisdiction by simply pleading only state-law claims when "federal questions [] are essential elements of [its] claim[s]." *Turgeau*, 446 F.3d at 1060–61 (quoting *Schmeling*, 97 F.3d at 1339) (internal quotation marks omitted).  However, to invoke federal-question jurisdiction, Devon must meet its burden and show that at least one of two recognized exceptions to the well-pleaded complaint rule is applicable—either (1) that Mosaic's state-law claims are completely preempted,[4] or (2) there is a substantial,

---

[4]      Given that this case implicates a somewhat Byzantine area of the law (i.e., preemption), we think it is important to be clear about what we are talking about going forward.  There are three forms of preemption that are frequently discussed in judicial decisions—express preemption, conflict preemption, and field preemption.  *See, e.g.*, *United Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010) (defining "express preemption," "field preemption," and "conflict preemption" (quoting *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998)) (internal quotation marks omitted)).  In discussing them, we have noted that "[f]ederal statutes can preempt state statutes either by an express statement of preemption or by implication." *Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1241 (10th Cir. 2011).  "Express preemption arises from explicit preemption language in the statute.  Implied preemption includes field preemption or conflict preemption."  *Id.*  For our purposes, it is important to distinguish these common forms of preemption from the doctrine of complete preemption—the doctrine at issue here.

In previously making such a distinction, we have referred to the three common forms of preemption as "ordinary preemption."  *See Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011); *accord Geddes v. Am. Airlines, Inc.*, 321 F.3d

(continued...)

disputed federal-law issue necessarily embedded in Mosaic's state-law claims.[5]

⁴(...continued)
1349, 1352 (11th Cir. 2003). "[O]rdinary preemption may be invoked in both state and federal court as an affirmative defense to the allegations in a plaintiff's complaint. Such a defense asserts that the state claims have been substantively displaced by federal law." *Geddes*, 321 F.3d at 1352; *see Hansen*, 641 F.3d at 1221 (noting that "ordinary preemption" is "a federal defense to a state-law claim under the Supremacy Clause of the Constitution"). Ordinary preemption "does not render a state-law claim removable to federal court." *Hansen*, 641 F.3d at 1221; *see Schmeling*, 97 F.3d at 1339 (rejecting the notion that "a defendant's assertion of a defense based on federal law, such as the federal preemption of the state law on which a plaintiff's claim is based, [is] a proper basis for removal, even if both parties agree that the only issue for decision in a case is the validity of a federal preemption defense" (citation omitted)); *see also Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999) ("The presence of a federal defense does not make the case removable, even if the defense is preemption and even if the validity of the preemption defense is the only issue to be resolved in the case."). On the other hand, as explicated in text *infra*, complete preemption "makes a state-law claim 'purely a creature of federal law,' and thus removable from state to federal court from the outset." *Hansen*, 641 F.3d at 1221 (quoting *Felix*, 387 F.3d at 1154–55); *see* S. Candice Hoke, *Preemption Pathologies and Civic Republican Values*, 71 B.U. L. Rev. 685, 748 n.295 (1991) ("The Supreme Court has emphasized that defensively asserted claims of federal preemption cannot, in the absence of applicability of the complete preemption doctrine, create federal question jurisdiction.").

Finally, we note that at least one circuit court has suggested that the doctrines of field preemption and complete preemption are conterminous. *See Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 864 n.4 (11th Cir. 2008) (noting that "complete preemption" is "also called 'field preemption'"). However, given that the former ordinarily refers to a substantive defense and the latter refers to a ground for removal, we are disinclined to endorse this view. *See Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 n.7 (2d Cir. 2005) ("[N]o Supreme Court case has ever held the two forms of preemption to be equivalent. It is true that the defense of field preemption and the doctrine of complete preemption both rest on the breadth, in some crude sense, of a federal statute's preemptive force. The two types of preemption are, however, better considered distinct.").

⁵      In addition to these common-law exceptions, Congress may authorize specific exceptions to the well-pleaded complaint rule. *See Verlinden B.V. v. Cent. Bank*

(continued...)

**1**

Devon argues that federal jurisdiction is appropriate here because Mosaic's claims are completely preempted by the interplay between the MLA, the 1986 Order, and the APA. Mosaic on the other hand argues that there cannot be complete preemption because no federal statute provides the foundation for such preemption in this action.

"The 'complete preemption' doctrine has been referred to as a corollary, or an exception, to the well[-]pleaded complaint rule." *Schmeling*, 97 F.3d at 1339 (citations omitted); *see Caterpillar*, 482 U.S. at 393; *Hansen*, 641 F.3d at 1220. Ordinarily, "[n]either the plaintiff's anticipation of a federal defense nor the defendant's assertion of a federal defense is sufficient to make the case arise under federal law." *Turgeau,* 446 F.3d at 1060; *accord Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998). However, "[w]hen the [complete-preemption] doctrine is properly invoked, a complaint alleging only a state law cause of action may be removed to federal court on the theory that federal preemption makes the state law claim 'necessarily federal in character.'" *Schmeling*, 97 F.3d at 1339 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)); *see Hansen*,

---

[5](...continued)
*of Nig.*, 461 U.S. 480, 494–95 (1983) (stating that the limitations imposed under § 1331 are not limitations on congressional power to confer jurisdiction on inferior federal courts under Article III of the Constitution). For example, it has done so in the context of federal officers or agencies sued or prosecuted in state court. *See* 28 U.S.C. § 1442; *see also Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 430–31 (1999) (describing operation of § 1442).

641 F.3d at 1221 (noting that "complete preemption makes a state-law claim . . . removable from state to federal court from the outset"); *see also Black's Law Dictionary* 324 (9th ed. 2009) (defining the "complete-preemption doctrine" as "[t]he rule that a federal statute's preemptive force may be so extraordinary and all-encompassing that it converts an ordinary state-common-law complaint into one stating a federal claim for purposes of the well-pleaded-complaint rule").

"Complete preemption is a rare doctrine," *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1260 n.16 (11th Cir. 2011), one that represents an "extraordinary pre-emptive power," *Taylor*, 481 U.S. at 65. The circumstances are so rare in fact that the Supreme Court has recognized complete preemption in only three areas: § 301 of the Labor Management Relations Act of 1947 ("LMRA"), § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), and actions for usury against national banks under the National Bank Act. *See Hansen*, 641 F.3d at 1221; *see also Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 560–61 (1968) (LMRA); *Taylor*, 481 U.S. at 62–63 (ERISA), and *Anderson*, 539 U.S. at 3–4 (National Bank Act). Consequently, the Supreme Court has warned that complete preemption should not be "lightly implied." *Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 752 (1983) (Brennan, J., concurring); *see also Schmeling*, 97 F.3d at 1340 (noting that the Supreme Court has extended this doctrine "reluctantly"). Further, for the complete-preemption doctrine to apply, the challenged claims must "fall within

-16-

the scope of federal statutes intended by Congress completely to displace all state law on the given issue and comprehensively to regulate the area." *Hansen*, 641 F.3d at 1221. That is, the asserted federal statute must "so pervasively regulate [its] respective area[]" that it leaves no room for state-law claims.[6] *Id*.

In *Schmeling*, we explained that

> [w]e read the term ["complete preemption"] not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal.

97 F.3d at 1342; *see Anderson*, 539 U.S. at 8 ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in

---

[6] We note that the MLA—the federal statute giving rise to the 1986 Order—does not, in itself, provide a "pervasive" regulatory scheme intended to occupy the entire field of federal mineral lands regulation. *See, e.g.*, *Kirkpatrick Oil & Gas Co. v. United States*, 675 F.2d 1122, 1124 (10th Cir. 1982) ("Through the [MLA] . . . , Congress has prescribed limited, *but not exclusive*, controls over the leasing of federal lands for oil and gas production." (emphasis added)); *Tex. Oil & Gas Corp. v. Phillips Petroleum Co.*, 406 F.2d 1303, 1304 (10th Cir. 1969) (affirming the district court's conclusion that "nothing in the [MLA] indicat[es] a Congressional intent to assert exclusive control of federal lands leased for oil and gas development"); *see also* Aplee. Br. at 31–32 (collecting cases). Because the underlying federal statute does not occupy the entire field—that is, because the MLA does not completely regulate all activities related to mineral development on federal lands, including disputes between two private parties, *see* Aplt. Reply Br. at 19 ("[T]he [MLA] generally does not govern dealings between private lessees on federal lands[.]")—it would seem to follow ineluctably that an order promulgated pursuant to the MLA, such as the 1986 Order, cannot occupy the entire field either.

-17-

reality based on federal law."); *see also* 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3722.2, at 403–09 (4th ed. 2009) ("In [the case of complete preemption], federal law does not merely preempt a state law to some degree; rather, it substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal.").

Thus, we have held that a claim of complete preemption demands a two-part analysis: first, we ask whether the federal regulation at issue preempts the state law relied on by the plaintiff; and second, "whether Congress intended to allow removal in such [a] case[], as manifested by the provision of a federal cause of action to enforce the [federal] regulation[]."[7] *Schmeling*, 97 F.3d at 1342. We

[7] In *Anderson*, the Supreme Court held that a state claim may be removed to federal court in only two circumstances: (1) "when Congress expressly so provides"; or (2) "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." 539 U.S. at 8. In providing further guidance concerning the requirements for complete preemption, the Court observed that "the proper inquiry focuses on whether Congress intended the federal cause of action *to be exclusive* rather than on whether Congress intended that the cause of action be removable . . . ." *Id.* at 9 n.5 (emphasis added); *see id.* at 9 (noting that "[o]nly if Congress intended" for the statutory provision authorizing a federal claim for usury "to provide *the exclusive cause of action* for usury claims against national banks would the statute be comparable to the provisions" the Court previously had held effected complete preemption of state-law claims (emphasis added)).

*Anderson*'s formulation of the complete-preemption test ultimately may require us to reformulate the test we set out in *Schmeling*. *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 304–05 (2d Cir. 2004) ("Given the Supreme Court's approach in *Anderson*, we conclude that it means to extend the complete preemption doctrine to any federal statute that both preempts state law and substitutes a federal

(continued...)

-18-

have cautioned, however, that courts should begin their inquiry with the second

prong.  *Id.* at 1343 (explaining that the interests of "comity and prudence" dictate

that courts avoid addressing needlessly the first prong, which will frequently

require a discussion of the merits of the preemption defense).

In this case, the district court applied the second prong of the *Schmeling*

complete-preemption test when it dismissed Devon's complaint on the ground that

the lack of a substitute federal remedy precluded a finding of complete

preemption.  Although on appeal Devon concedes that "Congress [did not]

provide[] Mosaic with a private remedy under the []MLA,"[8] Aplt. Opening Br. at

18,  it nevertheless argues that "Congress . . . provided Mosaic with a private

---

[7](...continued)
remedy for that law, thereby creating an exclusive federal cause of action."); *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 776 (5th Cir. 2003) (observing that *Anderson* "shift[ed the] focus from Congress's intent that the claim be removable, to Congress's intent that the federal action be *exclusive*").  However, we decline to do so here because the potential substantive difference in the two analytical frameworks is not implicated.  We are in substantial agreement with the district court's statement that "Congress's intent to create a federal cause of action is *essential under both formulations of the rule*," and "[i]f Congress did not create a federal cause of action, th[e]n it clearly did not intend that the federal law be exclusive or removable."  Aplt. App. at 132 n.2 (emphasis added).  As discussed *infra*, Congress did not create a relevant federal cause of action here.

[8]      This certainly appears to be true under *both* the MLA and the 1986 Order promulgated thereunder.  We have previously held that two different provisions in the MLA do not create a private right of action.  *See Cuba Soil & Water Conservation Dist. v. Lewis*, 527 F.3d 1061, 1062 (10th Cir. 2008) (concluding that § 191 of the MLA does not create a private right of action to enforce its provisions regarding appropriation of MLA monies); *Pullman v. Chorney*, 712 F.2d 447, 450 (10th Cir. 1983) (holding that § 42 allows private litigants only the right to seek the administrative remedy of cancellation of leases awarded by the Secretary of the Interior).  Likewise, we have never found that the 1986 Order provides a substitute federal remedy.

remedy of an appeal of the BLM's decision under 43 C.F.R. and the APA, which if Mosaic had been successful in such an appeal might have resulted in the plugging and abandonment of the Apache Well," *id.*; *see also* Aplt. App. at 93 (Pl.'s Mem. in Resp. to Def.'s 12(b)(1) Mot. to Dismiss for Lack of Subject-Matter Jurisdiction, filed Aug. 26, 2010) (arguing that "Mosaic has a private federal remedy under the APA against the BLM[, namely], appealing or protesting the BLM's approval of the Apache Well"). This argument is unavailing.

It is unquestioned that Mosaic had a right to challenge the BLM's ultimate approval of the Apache Well site. However, as the district court noted, "Devon misconstrues the purpose of the private right of action element of the 'complete preemption' doctrine. While Mosaic may have been able to appeal the BLM's approval of the Apache Well, the availability of an administrative remedy *against the BLM* has no bearing on whether Mosaic's state law claims *against Devon* have been completely supplanted by a private federal cause of action." Aplt. App. at 134 (emphases added).

Even though the APA "provide[s] [Mosaic] with a right of judicial review of *agency action*," *Hamilton v. Gonzales*, 485 F.3d 564, 568 (10th Cir. 2007) (emphasis added); *see Tewa Tesuque v. Morton*, 498 F.2d 240, 243 (10th Cir. 1974) ("It is fundamental that a party suing under the APA must have suffered a legal wrong because of agency action or inaction."), Mosaic is not challenging here any action or inaction by the BLM. Rather, Mosaic is "challenging Devon's

drilling of the well when it had no approval from the BLM to do so." Aplee. Br. at 29. As Mosaic explained, "[b]ecause the BLM prevented Devon from drilling the Apache Well at the location where Devon drilled anyway, Mosaic has no agency action to challenge. The only actions Mosaic contests are Devon's." *Id.* Thus, even if pursuing relief through the APA might ultimately have resulted in the Apache Well being plugged and abandoned, it would not have compensated Mosaic for any damages stemming from Devon's initial act of drilling at an unapproved well site. Hence, the APA does not provide Mosaic with "a federal cause of action to enforce the [federal] regulation[]," *Schmeling*, 97 F.3d at 1343, and complete preemption is not available in this case.[9]

Devon argues that this result is inconsistent with our observation in *Schmeling* that, "although a federal cause of action is a prerequisite to removal under the complete preemption doctrine, the federal cause of action need not provide the same remedy as the state cause of action." *Id.*; *see also* Aplt. Opening Br. at 18. As Devon would have it, the remedies available under the APA are sufficient, even if inferior, to those that might otherwise be available to Mosaic through its state-law claims. We continue to observe that mirror-like symmetry between the federal and state remedies is not required to support a

---

[9] Nor does the collective interplay between the MLA, APA, and the 1986 Order alter this analysis and require complete preemption. *See* Aplt. Opening Br. at 8. Just as Devon admitted that the MLA does not provide a federal remedy to Mosaic's state-law claims, neither the APA nor the 1986 Order provides a substitute federal remedy.

determination of complete preemption. *See Schmeling* 97 F.3d at 1343.

However, we believe that the federal remedy at issue must vindicate the same basic right or interest that would otherwise be vindicated under state law. *See Ry. Labor Execs. Ass'n v. Pittsburgh & Lake Erie R.R.*, 858 F.2d 936, 942 n.2 (3d Cir. 1988) ("The issue is not whether the federal law provides the same remedy available to the plaintiff under state law, but rather whether there is *some vindication* for the same interest." (emphasis added)); *cf. Caterpillar*, 482 U.S. at 391 n.4 (noting that the "breadth or narrowness of the relief which may be granted under federal law . . . is a distinct question from whether the court has jurisdiction over the parties and the subject matter" (quoting *Avco Corp.*, 390 U.S. at 561) (internal quotation marks omitted)). Mosaic seeks to assert state-law claims that relate to a distinct interest—namely, an interest in being free from harm from parties drilling without first obtaining the BLM's approval. In our view, this interest is too far removed from the interest that would be vindicated by an APA proceeding—*viz.*, an interest in ensuring (insofar as it impacts Mosaic's potash mining) that the BLM properly manages the Potash Area, including well sites. *Cf. Schmeling*, 97 F.3d at 1343.

**2**

Devon also contends that even if we do not find that Mosaic's claims are completely preempted, federal-question jurisdiction should still attach here because of substantial and disputed federal issues that are embedded in Mosaic's

state-law claims.[10]  On the other hand, Mosaic argues that Devon is improperly attempting to establish subject-matter jurisdiction by asserting what are nothing more than federal defenses and that the Supreme Court's decision in *Grable & Sons* does not provide a basis for Devon to proceed in federal court.  Ordinarily, federal-question jurisdiction is invoked by plaintiffs pleading a cause of action created by federal law.  *See Grable & Sons*, 545 U.S. at 312.  The Supreme Court, however, has recognized "that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."  *Id.*; *accord Schmeling*, 97 F.3d at 1339.  Under this theory, federal jurisdiction may attach

---

[10]    Mosaic asserts that we should not consider Devon's arguments on appeal regarding the Supreme Court's decision in *Grable & Sons* because Devon did not present the case to the district court, or argue that it applied, until its Rule 59(e) motion.  We do not agree for at least two reasons.  First, in its response to Mosaic's motion to dismiss, Devon argued that "[e]ven if the Court finds that complete preemption is not present in this case, the Court still has federal question jurisdiction because Mosaic's claims require this Court to construe federal law."  Aplt. App. at 98.  Further, Devon argued that by reaching the merits of Mosaic's claim, the district court "would have to determine whether the BLM's decision to approve of the Apache Well location as drilled was improper."  *Id.* at 99.  In sum and substance, this is an argument that federal-question jurisdiction is proper under the principles of *Grable & Sons*.  Second, "[f]ederal courts have an independent obligation to determine whether subject-matter jurisdiction exists . . . at any stage in the litigation," *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006)) (internal quotation marks omitted), and this jurisdictional argument cannot be resolved properly without application and discussion of the Supreme Court's controlling decision in *Grable & Sons*, *see Hicks v. Gates Rubber Co.*, 928 F.2d 966, 970 (10th Cir. 1991) (noting that an exception to ordinary waiver principles applies "where the jurisdiction of a court to hear a case is questioned"); *cf. Finstuen v. Crutcher*, 496 F.3d 1139, 1145 n.3 (10th Cir. 2007) ("[J]urisdictional issues are among the exceptional questions that we will hear even though they were not raised below.  To the extent OSDH's new arguments implicate our Article III jurisdiction, we will therefore address them." (citation omitted)).

where a "state-law claim *necessarily raise*[*s*] a stated federal issue, *actually disputed and substantial*, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons*, 545 U.S. at 312 (emphases added); *accord Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1235–36 (10th Cir. 2006).

In other words, to establish federal-question jurisdiction under the *Grable & Sons* test, a state-law claim (1) must necessarily raise a federal claim that is both (2) actually disputed and (3) substantial; and (4) that may be resolved in a federal forum without disturbing the balance of federal and state judicial responsibilities. This formulation ensures that "[t]he presence of a federal issue . . . is not necessarily 'a password opening federal courts to any state action embracing a point of federal law.'" *Nicodemus*, 440 F.3d at 1235 (quoting *Grable & Sons*, 545 U.S. at 314). We ultimately conclude that Devon has not carried its burden of establishing federal-question jurisdiction under *Grable & Sons*'s first and second factors. Accordingly, we refrain from analyzing and ruling on the other two factors.

Devon specifically argues that "the District Court clearly had federal question jurisdiction over Devon's Complaint because the essential elements of Mosaic's state claims . . . require[d] [it] to resolve the disputed and substantial interpretation of the []MLA and the 1986 Order." Aplt. Opening Br. at 22. In particular, Devon posits that resolution of Mosaic's claims will require a court to

decide "whether the BLM's approval of Devon's entry on the Secretary's Potash Area and its approval of the Apache Well w[ere] retroactive," and whether "the BLM ha[d] the authority to make such decisions retroactive under the []MLA and the 1986 Order." *Id.* Moreover, Devon suggests that this case brings into question the BLM's determination that no undue waste of potash has occurred. It claims that the BLM is vested with the exclusive authority to determine whether waste did, in fact, occur, and that Mosaic's state-law claims amount to a collateral attack on those determinations because its claims ultimately require a finding as to damages. Devon contends that these issues mean that Mosaic's case-in-chief presents a "federal question regarding the correct interpretation of the []MLA and the 1986 Order," as well as the BLM's authority vested thereunder. *Id.* at 33.

Devon's argument is bootless, particularly because Mosaic's contemplated state-law causes of action do not present a *disputed* federal issue that a court *necessarily* must decide. *See Grable & Sons*, 545 U.S. at 312–14. At the outset, it is important to note that Devon does not (and cannot) dispute that its drilling in the Potash Area in realtime was without the BLM's permission and authorization. *See* Aplt. Reply Br. at 4 ("[The] BLM . . . has the exclusive authority to determine when and where one lessee may explore and produce his lease in relation to . . . other lessee[s]."). Thus, even assuming *arguendo* that this federal matter of the BLM's drilling authorization would have been a necessary issue in Mosaic's lawsuit, it is not the subject of an actual dispute. And we hold that

-25-

Mosaic's state-law claims do not otherwise present federal-law issues that a court *necessarily* must resolve in adjudicating those claims. In particular, the district court rightly operated on the premise that Mosaic's claims would focus on seeking redress *from Devon* for alleged harm caused by its drilling during the time Devon lacked BLM authority to do so. Devon has failed to demonstrate that, in prosecuting those claims, Mosaic necessarily must challenge the BLM's exclusive authority to authorize well sites in the Potash Area.

Further, Devon would have us believe that the BLM's later approval of the well site demonstrates that the BLM wished to signal that Devon did no wrong, or at least that its wrongdoing was retroactively cured. However, even if this line of argument were plausible, that would not mean that such federal matters relating to BLM's conduct necessarily would need to be addressed by a court in adjudicating Mosaic's state-law claims against Devon. They might serve as viable federal defenses to Mosaic's claims, but Devon has not demonstrated that they would be more than that.

We recognize that a disputed federal issue could *possibly* be raised by Mosaic's claims. But that is not enough. In this regard, Devon argues that "[t]he lawsuit would require the state court to find, contrary to the BLM's approval of the [well site,] that the drilling of the well would interfere with the mining and recovery of potash deposits . . . and that the well would constitute a waste of potash deposits." *Id.* at 10. In order to find damages in this case, a factfinder

-26-

may well have to find that there was potash waste. Such a finding *could possibly* contradict the BLM's finding that Devon's Apache Well site, as drilled, would not "result in *undue* waste of potash deposits," 1986 Order § 3(III)(A)(2) (emphasis added), but we cannot say that it *necessarily* would.

Indeed, in this vein, it is unclear whether Mosaic's suit could ever impinge on the BLM's "exclusive authority" to make determinations regarding undue waste of potash deposits because the BLM does so only for the limited purpose of granting or denying oil and gas development leases. *See id.* § 3(III). As a result, a state court's decision pertaining to Devon's assumed trespass does not necessarily draw into question the exclusivity of the BLM's authority as it relates to postash-waste determinations for this limited leasing purpose. *Cf. Chuksa Energy Co. v. Mobil Exploration & Producing N. Am., Inc.*, 854 F.2d 727, 731 (5th Cir. 1988) ("The regulatory scheme of the [Indian Mineral Leasing Act] only pervades the actual alienation of the mineral rights from the Indian grantors. The dispute between Chuska and Mobil is over *the consequences* of regulatory requirements on their contract [and therefore no federal question is implicated]." (emphasis added)). In any event, the important point is that these possible federal issues are not *necessarily* raised by Mosaic's claims. Such issues might well be employed by Devon as federal defenses to Mosaic's claims, but federal-question jurisdiction does not lie as a result. *See Turgeau*, 446 F.3d at 1060 (holding that the availability of a federal defense does not implicate federal-question

-27-

jurisdiction); *accord Rivet*, 522 U.S. at 475.

Our rejection of Devon's argument for federal-question jurisdiction—predicated here upon a substantial-federal-issue theory—is strongly reinforced by an examination of the Supreme Court's decision in *Grable & Sons* and our precedent in *Nicodemus*. In both cases, federal-question jurisdiction was found to be present under this theory, but these cases are clearly distinguishable from what is now before us. First, in *Grable & Sons*, the Court was called upon to determine the extent to which a federal-tax issue was embedded in a state-law quiet-title claim. The Internal Revenue Service ("IRS") seized the property of the plaintiff, Grable & Sons, to satisfy a tax delinquency. The IRS then sold the property to a third party and provided a quitclaim deed. Five years later, Grable & Sons brought a quiet-title action against the third party in state court. Although Grable & Sons conceded that it got actual notice of the seizure from the IRS, it claimed that the third party's record title was invalid because the IRS had not strictly complied with its own applicable notice provisions. The third party removed the case to federal court, arguing that the quiet-title claim, even though created by state law, required the interpretation of the federal tax statute's notice provision—a substantial embedded federal issue.

In determining the outcome in *Grable & Sons*, as noted *supra*, the Court set out a four-prong approach—*viz.*, to establish federal-question jurisdiction, a state-law claim: (1) must necessarily raise a federal claim; (2) that is actually

disputed; (3) that is also substantial; and (4) that may be resolved in a federal forum without disturbing the balance of federal and state judicial responsibilities. *See Grable & Sons*, 545 U.S. at 314. And, in employing this test, the Court held that Grable & Sons's quiet-title state cause of action met all four prongs. As relevant here, regarding the first element of the test, the Court noted that the federal tax issue was necessarily raised because state law required Grable & Sons to specify the facts establishing the superiority of its title, and the *only* basis for the plaintiff to claim a superior title would be that the IRS failed to give proper notice under *federal law*. *See id*. at 315. And, as to the second element, the Court noted that "the meaning of the federal [tax] statute is actually in dispute." *Id.*

Likewise, in *Nicodemus*, the plaintiffs had alleged, *inter alia*, a state-law claim for unjust enrichment based upon the defendant railroad's decision to enter into licensing agreements with various telecommunications providers—from which the defendant received revenue—that would permit the providers to use the defendant's right-of-way over the plaintiffs' land for purposes of installing and maintaining fiber-optic cables. The defendant's right-of-way was a railroad right-of-way granted pursuant to federal land-grant statutes. The plaintiffs alleged that, by entering into the licensing agreements, the defendant had "exceeded the scope of [its] rights under the federal land-grant statute[s]." 440 F.3d at 1234.

We concluded that federal-question jurisdiction was present in *Nicodemus*

under a substantial-federal-issue theory. Of relevance here, we rejected the plaintiffs' contention that "the federal issue only arises as a defense to their claims and thus it is an inappropriate basis on which to assume federal-question jurisdiction." *Id.* To the contrary, we reasoned, "Plaintiffs' specific allegations of unjust enrichment are derived not from the alleged trespass, but from misuse of the right-of-way." *Id.* at 1235. We determined that "[t]o prove that [defendant] acted unlawfully, Plaintiffs [had to] establish that the right-of-way prohibited the use to which it was put. The federal issue, therefore, ar[ose] in Plaintiffs' case-in-chief, not by way of defense." *Id.* Furthermore, we found it "clear that the federal question [wa]s actually disputed. In fact, construction of the federal land grant appear[ed] to be the only legal or factual issue contested in the case." *Id.* at 1236.

The facts of this case stand in stark contrast to those in *Grable & Sons* and *Nicodemus*. In both of those cases, it was *necessary* for the court to interpret a disputed issue of federal-law in order for the plaintiffs to establish their state-law claims. In the case of *Grable & Sons*, this involved interpreting the federal tax code's notice provisions, *see Grable & Sons*, 545 U.S. at 315, and in *Nicodemus* it involved construing the right-of-way provisions of certain federal land-grant statutes, *Nicodemus*, 440 F.3d at 1236–37. Here, as to the federal issues that possibly could be in dispute, we discern no such *necessary* involvement—*viz.*, they need not necessarily be addressed in resolving Mosaic's contemplated state-

-30-

law claims. In particular, there is only a possibility that a federal issue might arise relative to the BLM's determination that there would be no *undue* potash waste associated with the as-drilled Apache site. Such a possibility is not enough. Simply put, Mosaic's contemplated state-law claims do not *necessarily* raise a disputed federal issue and thus do not fit into the "special and small category" of cases that can trigger federal-question jurisdiction under the *Grable & Sons'*s test. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006); *see id.* at 701 (reaffirming the *Grable & Sons*'s test and stating that cases achieving jurisdiction under *Grable & Sons* fall into a "slim category"). Consequently, the district court was correct in dismissing Devon's complaint for lack of subject-matter jurisdiction.

## C

Devon's final claim is that the district court erred in denying its Rule 59(e) motion because Devon presented to the district court "manifest law" and "many new . . . pieces of evidence," including Mosaic's actual state-court complaint and the BLM's file on the Apache Well. *See* Aplt. Opening Br. at 37. Further, Devon argues that this manifest law and new evidence demonstrated that federal-question jurisdiction was proper in this case. Mosaic argues that Devon's Rule 59(e) motion was improper because, by presenting this additional material, Devon was simply attempting to relitigate matters that already had been decided by the

-31-

district court.[11]

As noted, we review challenges to a district court's denial of a Rule 59(e) motion for an abuse of discretion, *see ClearOne Commc'ns, Inc.*, 653 F.3d at 1178; so long as the district court did not make a "clear error of judgment" or "exceed[] the bounds of permissible choice" in denying the motion, its decision will be affirmed, *id.* (quoting *Loughridge*, 431 F.3d at 1275) (internal quotation marks omitted). However, we are obliged to review the merits of Devon's purely legal jurisdictional arguments de novo. *Id.*

"Grounds warranting a [Rule 59(e)] motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously

---

[11] Mosaic also contends in passing that arguments made by Devon in a supplemental brief in support of its Rule 59(e) motion should be essentially barred as untimely. *See* Aplee. Br. at 40 ("Devon tried for a third time to support its argument that Mosaic's claims raised a federal issue and jurisdiction existed when it filed it[s] Supplemental Rule 59(e) *motion*. . . . [That motion] was untimely." (emphasis added)). This argument, however, reflects an improper characterization of Devon's filing. That filing was exactly what it was termed—*viz.*, supplemental, supportive *briefing* for Devon's timely filed Rule 59(e) motion. It was not a *separate motion*. The district court did not necessarily abuse its considerable discretion by taking into account the substance of Devon's supplemental arguments covering, generally speaking, some of the same jurisdictional terrain as the timely filed Rule 59(e) motion already before it, especially since Mosaic had an opportunity before the district court to respond to Devon's supplemental arguments and, in fact, did so, *see* Aplt. App. at 264 (Def.'s Resp. to Pl.'s Opposed Rule 59(e) Mot. & Br. to Alter or Amend the Court's Order Dismissing Pl.'s Compl., filed Nov. 29, 2010) ("Even if the Court wishes to consider the Supplement [of Devon], its arguments are incorrect and without merit."). *Cf. Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) ("The district court has considerable latitude in managing the parties' motion practice and enforcing local rules that place parameters on briefing."). And Mosaic has not come close to demonstrating that the district court abused its discretion in this regard.

unavailable, and (3) the need to correct clear error or prevent manifest injustice."
*Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *accord*
*Brumark Corp. v. Samson Res. Corp.*, 57 F.3d 941, 948 (10th Cir. 1995); *see also*
*McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) ("A motion for
reconsideration under Rule 59(e) 'should not be granted, absent highly unusual
circumstances, unless the district court is presented with newly discovered
evidence, committed clear error, or if there is an intervening change in the
controlling law.'" (emphasis omitted) (quoting *389 Orange St. Partners v. Arnold*,
179 F.3d 656, 665 (9th Cir.1999))).

At the outset, we note our agreement with the district court's assessment of
the legal arguments of Devon's Rule 59(e) motion. Devon's substantial-federal-
issue argument, which was predicated on *Grable & Sons*, evinced an attempt to
relitigate—in more expansive fashion—a legal position it had raised in its
response to the motion to dismiss and, as such, the argument was not properly
presented. *See* Aplt. App. at 292 ("Devon appears to merely be using Rule 59(e)
to fully develop an argument that it mentioned only in passing in its initial
briefing on this issue in its Response to Mosaic's Motion to Dismiss."). In any
event, for the reasons discussed in Part II.B.2, *supra*, the district court's legal
conclusions were sound in rejecting this argument on the merits; therefore, the
court did not abuse its discretion.

Furthermore, we do not discern an abuse of discretion in the district court's

-33-

rejection of Devon's Rule 59(e) argument based upon "newly discovered" evidence. The district court concluded that the substance of the evidence that Devon offered in its Rule 59(e) motion was before it prior to ruling on the motion to dismiss, even if the specifics were not. Devon disagrees, arguing that its evidence reveals new and important facts, including (1) the extent to which Mosaic would "rely on the 1986 Order for the basis of its claims and its damage model," Aplt. Opening Br. at 38; (2) the fact that "the BLM had been present as the Apache Well was being drilled and took no steps to prevent the Apache Well's drilling and completion, which . . . adds further credence to the fact that the Apache Well was indeed authorized retroactively to the date it was drilled," *id.*; and (3) the fact that "the BLM had contemplated and ultimately rejected the plugging and abandonment of the Apache Well," *id.* at 38–39. On this last point, Devon claims that the BLM's report "provided the District Court [with] unequivocal evidence that Mosaic did have a remedy under the APA" and, if Mosaic had properly pursued such a remedy, it at least had the opportunity to have the Apache Well plugged and abandoned. *Id.* at 39.

However, reviewing Devon's "newly discovered" evidence, it is patent that the district court did not abuse its discretion. "Where a party seeks Rule 59(e) relief to submit additional evidence, the movant must show either that the evidence is newly discovered [or] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to

-34-

discover the evidence." *Somerlott v. Cherokee Nation Distribs., Inc.*, --- F.3d

----, No. 10-6157, 2012 WL 3055566, at *8 (10th Cir. July 27, 2012) (alteration in

original) (quoting *Comm. for First Amendment v. Campbell*, 962 F.2d 1517, 1523

(10th Cir. 1992)) (internal quotation marks omitted). Although Devon points to a

number of specific facts that it claims could not have been anticipated by the

district court, it does not adequately explain why this evidence should undermine

our confidence in the district court's determination. We have indicated in an

analogous context that newly discovered evidence must be "of such a nature as

would probably produce a different result." *Kan. City S. Ry. v. Cagle*, 229 F.2d

12, 15 (10th Cir. 1956); *accord Joseph v. Terminix Int'l Co.*, 17 F.3d 1282, 1285

(10th Cir. 1994); *Graham v. Wyeth Labs.*, 906 F.2d 1399, 1416 (10th Cir. 1990).[12]

Similarly, in order to support a Rule 59(e) motion, we have required the

aggrieved party to demonstrate "how newly discovered evidence warranted relief

from dismissal." *Computerized Thermal Imaging, Inc. v. Bloomberg, L.P.*, 312

F.3d 1292, 1300 (10th Cir. 2002); *see Comm. for First Amendment*, 962 F.2d at

1523–24 (finding no abuse of discretion in the district court's denial of a Rule

59(e) motion on the ground that, *inter alia*, the "proffered [new] evidence . . .

would not produce a different result"). Considering our analysis of the district

court's ruling on the motion to dismiss, we cannot discern any basis upon which

---

[12]    New evidence will not support a different result where it is "merely
cumulative." *Joseph*, 17 F.3d at 1285; *accord Graham*, 906 F.2d at 1416–17.

Devon's purportedly new evidence would produce a different result, and Devon has not given us one. Thus, we conclude that the district court did not abuse its discretion in denying Devon's Rule 59(e) motion.

### III

For the foregoing reasons, the district court's dismissal of Devon's complaint and its order denying Devon's Rule 59(e) motion are **AFFIRMED**.